**UNITED STATES of America,
Appellant,**

v.

**Ronald H. GLANTZ and Anthony J.
Bucci, Defendants, Appellees.**

**No. 86–1735.**

United States Court of Appeals,
First Circuit.

Argued Dec. 2, 1986.

Decided Feb. 2, 1987.

Christopher G. Caldwell with whom John M. Campbell, Criminal Div., Dept. of Justice, Stephen S. Trott, Asst. Atty. Gen., Washington, D.C., and Lincoln C. Almond, U.S. Atty., Providence, R.I., were on brief, for appellant.

Robert B. Mann with whom Anthony J. Bucci, Jr., Providence, R.I., was on brief for defendants, appellees.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

This case requires us to make a particularly difficult determination: whether the district court erred in deciding that defendants Ronald Glantz and Anthony J. Bucci were entitled to a new trial because of improprieties in the government's closing and rebuttal arguments. After a close and careful scrutiny of the record, we conclude that the district court, although understandably concerned about "[t]he fundamental rights at issue," nevertheless erred when it granted the new trial. We therefore reverse.

I.

The indictment in this case charged defendants with extorting $77,350 from James Notarantonio through a kickback scheme involving Notarantonio's lease of garbage trucks to the City of Providence, Rhode Island. At the time of the alleged extortion, defendant Glantz was the City Solicitor of Providence and defendant Bucci was an attorney in private practice. Bucci's brother-in-law, Clement Cesaro, was then director of the Providence Department of Public Works, a position he obtained with Bucci's assistance.

The government's evidence at trial was presented primarily through Notarantonio's testimony. Notarantonio testified that Glantz solicited from him the lease used in the kickback scheme, and that Bucci was able to arrange for an inflated contract between Notarantonio and the city because of the position held by Bucci's brother-in-law Cesaro at the Department of Public Works. The government's evidence also showed that Cesaro departed from normal city procedures when he requested unlimited discretion to negotiate the gar-

bage truck lease with Notarantonio. The lease itself also reflected a deviation from the norm, lacking a signature line for the mayor and instead containing Cesaro's signature. The government also presented charts to the jury showing the correlations by date and amount of seventeen payments from the City to Notarantonio and eight supposedly related payments from Notarantonio to Bucci.

During cross-examination of Notarantonio, Bucci's attorney sought to establish that Bucci had performed legal and consulting services for Notarantonio for which he earned the $77,350. The defense also presented the testimony of a number of other witnesses, some of whom discussed work Bucci supposedly did for Notarantonio. The government sought to discredit the legal fees theory, particularly emphasizing that Bucci had no records of such work. The government read into evidence sworn testimony given by Bucci before the Securities and Exchange Commission in 1983, in which Bucci responded to a subpoena duces tecum for the production of records of work done for Notarantonio or Notarantonio's company by turning over documents showing only unreimbursed expenses of less than a thousand dollars.

Defendants were convicted after a three-week trial of conspiracy to extort kickback payments from Notarantonio and of the substantive crime of extorting those payments. Defendant Bucci also was convicted of conspiracy to conceal the kickback scheme from the Internal Revenue Service and of preparing two false documents for presentation to the IRS. Defendants moved for a new trial on four grounds: insufficient evidence, inadequate jury instructions, grand jury abuse, and closing and rebuttal arguments by the government that impermissibly shifted the burden of proof and commented on the defendants' failure to take the stand. The district court rejected the first three of these grounds, but granted a new trial in the belief that the prosecutor's arguments im-

properly influenced the jury. On appeal, the government claims that there was nothing improper in its argument and, even if there was some impropriety, any error was either cured through instruction or harmless.

## II.

We preface our discussion with a description of the allegedly offending prosecutorial statements. Shortly after the prosecutor began his argument, immediately after he detailed the charges listed in the indictment, he made the following comments:

> You must decide, ladies and gentlemen, that money $77,350, it's either legal fees or kickbacks. There's no other alternative. It's one or the other. Legal fees or kickbacks. And you have to make that decision."

This theme—"legal fees or kickbacks"—was raised repeatedly during the closing statement, and much of the prosecutor's argument was directed toward attacking the notion that the money could be legal fees. In evaluating the evidence presented by the defense that the payments were legal fees, the prosecutor posed the questions, "Who else did you hear from? Who else did the defense call on this issue of legal fees?" The prosecutor specifically honed in on the defendants' failure to produce documents showing that the money was legal fees. At one point, for example, the prosecutor stated:

> They [defendants] bring in a six year old phone bill, ladies and gentlemen. But in 1983 they can't produce any records for the S.E.C. about the work that he did. Not a one. If such a file existed she [Bucci's secretary] would have guarded it with her life. As would any lawyer.

After an objection by defendants' lawyers based on shifting the burden of proof, and a brief curative instruction by the court,[1] the prosecutor continued:

> Ladies and gentlemen, isn't it obviously true, lawyers don't throw out their research, they don't throw out their final

---

1. The court told the jury: "I've instructed you as to how you regard the arguments by counsel and you just apply those instructions when you evaluate it. All right."

work product. It doesn't make sense. She [the secretary] told you later he did other work involving exporting or importing for another client. If you throw it out after you do it once you've got to start from scratch again. Nobody does that, ladies and gentlemen. You saw this man during the course of this trial, why he's doing it right now, even as we speak. Notes, every day during the course of this trial he took notes. Paper, paper, paper, that's what lawyers are all about, ladies and gentlemen. But he doesn't have a document. It doesn't make any sense. You know, ladies and gentlemen, we're talking about $77,350 worth of allegedly legal fees. Now, we don't know what Mr. Bucci charged per hour then. We don't know. If it were $100 an hour, you're looking at 773 hours. It's almost 20 weeks, that's five months of legal work. No files, no research, it's just unbelievable ladies and gentlemen, but that's what this case is all about. Legal fees or kickbacks.

The prosecutor then made a few more remarks denigrating the legal fees defense before concluding his argument. After a short recess, defendants' counsel moved for a mistrial on the ground that the prosecutor had impermissibly "shifted the burden throughout the argument." The district court denied the motion, but gave the following cautionary instruction to the jury:

You know, Members of the Jury, I told you in the beginning and I tell you again, that you are the judges of the facts in this case and you alone decide what the facts are. If counsel in argument refer to facts and you have no recollection of them, or there may be a challenge as to whether such facts were said. Well, if they're not in the record and you don't remember them, they just can't be. You have to recall the facts, you have to find the facts, independent of what counsel has told you. And so it is on the burden of proof. I told you from the beginning that the burden is on the government to prove the case in all its respects. And these principles you have to keep in mind

when you're in your jury room, as you listen to these arguments. All right, let us proceed.

The emphasis on defendants' failure to produce records was repeated, and objected to twice more during the prosecutor's rebuttal argument. In attempting to rehabilitate the credibility of Notarantonio, the prosecutor suggested that it would be implausible for Notarantonio to have fabricated the kickback story if the money were actually legal fees because legal fees would be easy to prove.

You know, there's one other thing that I find very interesting, the notion that Mr. Notarantonio made up a lie that these were in fact legal fees, these checks, but that he decided he was going to lie about that. What a crazy thing to lie about. Now, Ladies and Gentlemen I don't know if any of you have ever been to lawyers, but you've certainly been to other professionals, you've certainly been to doctors, you've certainly been to dentists. Doctors, and lawyers, and Dentists, they don't have trouble showing what work they did and when they did it. Why they were able to bring in records from six years ago for Doctor Murray—

Defendants' lawyers then objected, referring to "the same objection," the improper shifting of the burden of proof. The court gave another brief cautionary instruction, reminding the jury of the government's burden of proving the case beyond a reasonable doubt and noting that the "[d]efense doesn't have to prove anything or disprove anything." The prosecutor then continued:

Thank you, your Honor. We accept that 100%, the government has the full burden here. My point is a simple one. If Mr. Notarantonio is telling a lie, if those were in fact legal fees, he was taking a big risk because he had to assume that if those were legal fees, which is the contention, that if those were legal fees, boy he could be blown right out of the water, it would be very simple to show that those were legal fees, and to establish

that he was lying. It doesn't make sense that he'd lie about such a thing.

Defense counsel again objected and, at a bench conference, argued for the first time that the prosecutor's argument improperly touched upon the defendants' failure to take the stand as well as improperly shifted the burden. The court again denied a mistrial, but gave the following curative instruction:

> Again, Members of the Jury, the burden of proving a case rests upon the United States Government. The defendants don't have to prove anything, they don't have to disprove anything, they don't have to produce anything. For you to be—for you to resolve this case as to guilt or innocence, you look to the evidence. However, you look at this evidence in its entirety. And I will instruct you more completely on that. And just as I told you about the presumption of innocence, I told you now about the burden of proof, and so I will tell you also, during the instructions that a defendant does not have to testify in a case, and no inference is to be drawn from that kind of testimony, it's the concept and the philosophy of our criminal jurisprudence that underlines all of these cases that you have to keep in mind.

### III.

We have recently, and repeatedly, stated that:

> In deciding whether a new trial is required—either because prosecutorial mis-

conduct likely affected a trial's outcome or to deter such misconduct in the future—we consider the severity of the misconduct, whether it was deliberate or accidental, the context in which it occurred, the likely curative effect of the judge's admonitions and the strength of the evidence against the defendant.

*United States v. Ingraldi,* 793 F.2d 408, 416 (1st Cir.1986); *United States v. Cox,* 752 F.2d 741, 745 (1st Cir.1985); *United States v. Capone,* 683 F.2d 582, 586 (1st Cir.1982). In applying this test, the district court found "misconduct" that bordered on "a fairly severe violation of the constitutional prohibition against comment on a defendant's failure to testify or produce documents ... and against shifting of the burden of proof." The court held that the cumulative effect of repeated prosecutorial comments could not be rebutted by cautionary instructions, and that, given the context and frequency of the statements at issue, "the jury almost certainly was improperly swayed or influenced in its deliberations by misconceptions as to the burden of proof and privilege against self-incrimination."

■ We disagree with this assessment of the prosecutor's arguments and their likely effect on the jury to such an extent that we feel compelled to conclude that the district court's decision to grant a new trial represents an abuse of discretion.[2] We do not say that the district court's conclusions were totally unfounded; rather, we think the court unduly emphasized the problems

---

**2.** Although the government is correct that a *de novo* standard of review would apply to the legal question of whether the prosecutor's argument constituted misconduct, we conclude that the decision to grant a new trial because of any misconduct is subject to review only for abuse of discretion. The trial judge

> has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

*Arizona v. Washington,* 434 U.S. 497, 514, 98 S.Ct. 824, 834, 54 L.Ed.2d 717 (1978). *Cf. United States v. Indelicato,* 611 F.2d 376, 387 (1st Cir. 1979) (involving motion for new trial on weight

of the evidence grounds) ("[m]otions for a new trial are directed to the broad discretion of the trial judge, who may weigh the evidence and evaluate the credibility of witnesses in considering such a motion.") *See United States v. Shaffer,* 789 F.2d 682, 687 (9th Cir.1986); *United States v. Martinez,* 763 F.2d 1297, 1312 (11th Cir.1985); *United States v. Draper,* 762 F.2d 81, 82–83 (10th Cir.1985).

We see no need to dissect this case, however, by determining first, whether there was constitutional error and, second, whether that error warranted a new trial. Rather, even if some aspects of the government's argument crossed over the line of propriety, we conclude that it was an abuse of discretion to grant the new trial.

that existed and, therefore, unnecessarily intervened in a process that—although imperfect—adequately protected defendants' rights. This is not an " 'exceptional case[ ],' " *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir.1970), in which a new trial is needed to avoid " 'a miscarriage of justice,' " *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir.1979).

We do not reach this conclusion lightly. To be sure, the government's rhetorical approach had its problems. In the abstract, the "kickbacks or legal fees" theme could be understood to suggest that the jury needed to decide whether the government had proven the money was kickbacks or whether the defendants had proven the money was legal fees. The jury's actual task, of course, was to decide not which theory was more convincing but only whether the government had proven beyond a reasonable doubt that the money was illegal payoffs.

Interestingly, the district court found no problem with the "kickbacks or legal fees" theory per se, and defendants never objected to the prosecutor's use of this particular language. Undoubtedly, this was because the theory, although potentially misleading with regard to the burden of proof, accurately described the evidence in the case. Because the defendants had specifically tried to rebut the government's evidence of kickbacks by showing that the money actually had been paid to Bucci as legal fees, the jury, in fact, had been presented with a case of "kickbacks or legal fees." [3]

What instead bothered the court and the defendants were the prosecutors' statements stressing the defendants' failure to produce documents to prove the truth of their theory that the payments were legal fees. Although the district court apparently felt that it was a close call as to whether each troublesome aspect of the arguments individually violated defendants' rights, it was convinced that the cumulative impact of the challenged statements added up to a serious violation of defendants' rights.

We have several problems with this conclusion. First, with regard to shifting the burden of proof, we think the district court gave short shrift to the government's right to comment on the plausibility of the defense theory. In *United States v. Savarese*, 649 F.2d 83, 87 (1st Cir.1981), we recognized that the government is entitled, to some extent, to comment on a defendant's failure to produce evidence supporting the defense theory of the case.

> [D]efendant chose to call witnesses and put forth an alibi. Having done so, he had no right to expect the government to refrain from commenting on the quality of his alibi witnesses *or from attacking the weak evidentiary foundation on which the alibi rested.*

*Id.* (emphasis added). In this case, the government's rebuttal was to suggest that the legal fees theory was implausible because if the money had been legal fees, certainly there would have been records indicating the work that had been done. Each of the prosecutor's challenged comments about records is logically interpreted in this manner: the contrast between the absence of legal fee records and the existence of a six-year-old phone bill; the reminder that "[d]octors, lawyers, and dentists ... don't have trouble showing what work they did and when they did it"; the implicit assertion during the rebuttal argument that it would be very easy to show that Notarantonio was lying because if the money were legal fees there would be records. [4]

**3.** Defendants also did not object to the posing of questions such as "Who else did you hear from? Who else did the defense call on this issue of legal fees?" They later argued, however, that these questions directed the jury's attention to Bucci's failure to testify. We agree with the district court that these questions would not have been understood by the jury as referring to Bucci's failure to testify. Certainly, there is no "miscarriage of justice" warranting a finding of plain error. *See United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985).

**4.** The government argues that its references to the absence of records were linked to Bucci's failure to produce documents in 1983 before the SEC, and would not have been understood as a comment on his failure to produce documents at trial. We have no doubt that a substantial

The district court stated that "[t]he prosecution commentary was aimed not only at the *weaknesses* in the defense evidence, but also at the absence of defense records." (Emphasis in original.) But the *absence* of records *was* the primary weakness in the defense theory. Moreover, the government had presented affirmative evidence, in the form of Bucci's own earlier testimony before the SEC, that the records did not exist, and it was logical for the government to highlight this evidence.[5] We therefore disagree with the district court's conclusion that these comments "could only have been understood by the jury as directed to the failure of the defense to produce documents...." Instead, we think the most logical impact of these comments was to urge the jury to reject legal fees as a plausible alternative to the evidence of kickbacks presented by the government.[6]

Second, we also think it far from inevitable that the jury would construe the prosecutor's comments as references to the defendants' failure to take the stand. Although this circuit proscribes even indirect prosecutorial comment on a defendant's

failure to testify, *United States v. Lavoie*, 721 F.2d 407, 408 (1st Cir.1983), the standard nevertheless is

"whether, in the circumstances of the particular case, 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *United States v. Monaghan*, 741 F.2d 1434, 1437 (D.C.Cir.1984) (quoting *United States v. Williams*, 521 F.2d 950, 953 (D.C. Cir.1975). *See also United States v. Babbitt*, 683 F.2d 21, 24 (1st Cir.1982) ("the prosecutor's comments were not such that the jury would 'naturally and necessarily' construe them to refer to a defendant's failure to testify."); *United States v. Savarese*, 649 F.2d at 87 ("The prosecutor's statements here could not reasonably be construed by the jury as 'intentionally aimed at commenting upon defendant's failure to take the stand,' *United States v. Kubitsky*, 469 F.2d 1253, 1255 (1st Cir. 1972)....")

We are convinced that the inference of a comment on the defendants' failure to testify is far too attenuated in this case to

portion of the government's comments would have been understood by the jury as pointing to the failure to come up with evidence supporting their legal fees theory at trial, as well as before the SEC and grand jury. This conclusion does not, however, determine the propriety of the prosecutor's closing and rebuttal arguments.

5. Defendants argue that the SEC investigation was limited in scope to Bucci's efforts on behalf of Notarantonio's business, the Inge Company, and that the failure to produce documents before the SEC does not indicate that no records existed of other legal work Bucci did for Notarantonio. Whatever the primary scope of the SEC probe, however, the fact remains that the subpoena sought "any and all records of any services rendered to and/or for Inge Company, Incorporated of Providence, Rhode Island *and/or James Notarantonio....*"

6. The government at one point in its closing argument spelled out the interrelationship between the government's burden of proof and the plausibility of the defense theory:

You know, as you were told in the very beginning and several times during the course of the trial, the defendants never, never have to

prove anything. It's the government's burden, a burden we welcome. But you know, when the defendants put on a defense you've got to consider their evidence too. Look at their evidence, let's weigh its credibility, decide does it persuade you or not. Well, defendant Bucci claimed that these were legal fees and he went to great lengths to prove this. He cross-examined Mr. Notarantonio for some three days. They brought in Miles Turkat, they put Michael Bucci on the stand, put Mrs. Bucci on the stand, and you heard from Olga Henkel. All done to show that this was extensive legal work. They also called Mr. Shanahan yesterday. Let's examine this evidence. Let's look at it and decide if it supports the claim that these are legal fees. Or if it's not so weak that it shows that these are really kickbacks.

Although a prosecutor's prefatory statement acknowledging the burden of proof may suggest recognition of "relevant danger lurking in the [remarks] that followed," *United States v. Cox*, 752 F.2d at 745, it would be wrong to presume impropriety simply because the prosecutor has explicitly acknowledged the government's burden. We do not believe the prosecutor's comments in this case were an intentional prelude to misconduct.

warrant a new trial. The prosecutor's statements focused specifically on the apparent non-existence of certain documents arguably crucial to the defense theory rather than generally on the defendant's failure to rebut the government's case. Thus, the emphasis in this case was not on the defendant's silence but on the weakness of his chosen defense. *Compare United States v. Flannery*, 451 F.2d 880, 882 (1st Cir.1971) (prosecutor's reference to "uncontradicted" government testimony impermissible, when "contradiction" would have required defendant to take the stand) *with United States v. Lavoie*, 721 F.2d at 408 (no reversible error found in comment, "... you might ask yourself what has Mr. Lavoie put between himself and the truth?) *and United States v. Babbitt*, 683 F.2d 21, 23–24 (1st Cir.1982) (no error in comment, "While you search out the truth you may wish to ask yourself, 'Who has appeared before me in the form of a witness?'").

Defendants argue that the statements questioning the lack of records must have been understood by the jury as a reference to Bucci's failure to testify because Bucci was the only witness who could have produced the legal documents concerning Bucci's work for Notarantonio. Even if Bucci were the only one who could authenticate the documents, this fact does not transform an attenuated inference into one that "naturally and necessarily" would be taken as a comment on his silence. Moreover, even if technically defendants were correct that Bucci was the sole competent witness on the documents—and our reading of the record does not tell us either way—we think the existence of other "recordkeeping" witnesses makes it unlikely that the jury would have viewed the challenged comments as pointing to defendants' silence at trial rather than to the lack of evidentiary support for the defense theory. Olga Hoenkel, Bucci's former legal secretary, testified that she had typed documents for Notarantonio and she, or a possible successor, therefore would have been likely candidates to testify on the supposed legal records. In addition, Bucci's wife testified about a telephone record introduced

at trial, and the jury could have considered her as another possible source for the legal records. Finally, there also was evidence that Bucci practiced law with his daughter, and the jury could have focused on her as a possible records custodian.

Although the prosecutor's language obviously was susceptible to more problematic interpretations, we find the Supreme Court's language in *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974) to be particularly appropriate here:

> [A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Moreover, even if some damage was done by the prosecutor's comments, the district court lived up to its own high standard of giving timely and punctilious curative instructions. We believe it underestimated the efficacy of its own performance. Three times upon defense objection the court instructed the jury that the burden was on the government to prove the case, and the court also told the jury that the defense need not prove or disprove anything and had no obligation to produce anything. In addition, the court's preliminary instructions before trial, and five paragraphs of its instructions at the close of trial before deliberations, blanketed the specific occasions with clear before and after references to the burden of proof and the defendant's right not to testify or to produce any evidence.

In addition to the court's instructions, it is worth noting that the defense lawyers also specifically responded to the "kickbacks or legal fees" theme of the prosecution. Near the beginning of his closing argument, Bucci's lawyer made the following comments:

> [The prosecutor] says that the question is are these legal fees or are they payoffs? That's not the question. That is not, not, not the que[s]tion. The ques-

tion is are these payoffs and are they payoffs beyond reasonable doubt? The defendants in this case have no burden to prove that these are legal fees. My only reason for standing here is to persuade you that the Government has failed to prove beyond reasonable doubt that these are payoffs.

He returned to that theme toward the end of his argument:

So you ask yourself, well, can we honestly believe that these are legal fees? And once again I remind you, it's not my burden to show you they're legal fees. The question is has the Government prove[n] that they're payoffs beyond reasonable doubt.

Glantz' attorney similarly referred to the burden of proof, and near the end of his argument observed that "the key in this defense" is the government's burden of proving the case beyond a reasonable doubt. Thus, the jury in this case was reminded repeatedly of the government's burden and of the defendants' right to remain silent.

Although our previous discussion disposes of the case, for the sake of completeness, we note that the final prong of the standard for a new trial set out in our cases—the strength of the evidence against the defendants—also militates against a new trial here. The district court ably discussed the sufficiency of the evidence in this case, and we see no reason to differ from its conclusion that "the government certainly had a strong case against the defendants."

Thus, we are convinced that no significant error attended defendants' convictions. While we reiterate our strong conviction that prosecutors should exercise "a heightened sensitivity," *United States v. Lavoie*, 721 F.2d at 409, so as to avoid improper comments potentially harmful to defendants, this is not a case in which injustice occurred. The substantially appropriate nature of the prosecutor's comments, the repeated correction of any possible deficiencies, and the strong government case all lead to the conclusion that the district court abused its discretion in taking the rare step of ordering a new trial.

## IV.

■ We find no merit in the defendants' arguments that other grounds support the grant of a new trial. We agree with the district court's treatment of defendants' challenges to the sufficiency of the evidence and the adequacy of the jury instructions. Defendants' claim of error arising from the prosecutor's comments regarding Bucci's in-court behavior was not made to the district court, and therefore must be evaluated under the "plain error" standard. *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); *United States v. Collatos*, 798 F.2d 18, 20 n. 5 (1st Cir.1986). Although we do not condone such argument, *see Borodine v. Douzanis*, 592 F.2d 1202, 1210–11 (1st Cir.1979), we have no doubt that, viewed in context, the comment did not "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice," *Young*, 470 U.S. at 16, 105 S.Ct. at 1047. The reference to Bucci's note-taking was simply one variation of the theme stated repeatedly by the prosecutor that the legal fees defense was implausible because Bucci, a lawyer, would have made records showing the legal work performed for such fees. Any arguable prejudice flowing from the prosecutor's comment could have been remedied by a curative instruction given upon timely objection. *See Borodine*, 592 F.2d at 1211.

*For the foregoing reasons, the judgment of the district court is vacated, and the case is remanded with directions to reinstate the jury verdict and for other proceedings consistent with this opinion.*