**UNITED STATES of America, Appellee,**

v.

**James E. TURNER,
Defendant, Appellant.**

No. 89–1219.

United States Court of Appeals,
First Circuit.

Heard Oct. 4, 1989.
Decided Dec. 21, 1989.

Owen S. Walker, Federal Defender Office, was on brief for defendant, appellant.

Paul V. Kelly, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief for appellee.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and TIMBERS,* Senior Circuit Judge.

TORRUELLA, Circuit Judge.

On November 21, 1988, in the United States District Court for the District of Massachusetts, a jury returned a verdict convicting James E. Turner of uttering counterfeit currency (Count I), and dealing in counterfeit currency (Count II), in violation of 18 U.S.C. § 473. It is from these convictions that Turner now appeals. We affirm the convictions.

## I. BACKGROUND

On two separate occasions during the last week of July, 1988, Turner allegedly passed a $20 counterfeit bill at Gaeta's Shell station in Peabody, Massachusetts. On a third occasion, Turner apparently attempted to pass a third counterfeit $20 bill, but was recognized by one of the gas station attendants as the person who had passed a phony bill earlier in the week. The attendant took note of Turner's license plate number and the police were called. Turner was subsequently apprehended, and charged with uttering the counterfeit notes.

Turner was also charged with dealing in counterfeit currency, as a result of a trans-

action in counterfeit bills with an acquaintance, Ronald Duprey. Turner allegedly gave Duprey four counterfeit $20 bills, and told him that he would be required to pay Turner $40 in genuine currency once he had passed the bills.

Duprey successfully passed two of the bills, but when the third was tendered, it was recognized as counterfeit. Duprey fled and then hid the fourth note, but was quickly apprehended and arrested. All four of the counterfeit bills were eventually recovered.

The record shows that the four notes which Duprey attempted to pass, and the two which Turner did pass, were very similar. Testimony was also offered by the government to the effect that they were all printed on the same machine. The evidence also showed that the serial number on one of the bills passed at Gaeta's Shell Station was the same as the serial number on a bill passed by Duprey.

Duprey assigns two causes of error. Upon careful examination, however, we find that neither has merit.

## II. REBUTTAL STATEMENT

■ Turner argues that the government's reference in its rebuttal argument to "defendant, James Turner, who sits so innocently over there" was a prohibited comment on appellant's failure to testify, and a disparagement of the presumption of innocence. As such, Turner contends that he should be granted a new trial.

Although it would have been better if the remark had not been made, this isolated statement, in the context in which it was made, was not sufficient to deprive the defendant of a fair trial. Constitutionally, the defendant is entitled only to a fair trial, not to a perfect one. It was within the trial judge's discretion to conclude that the statement, although improper, did not constitute misconduct of a magnitude sufficient to warrant a new trial. Upon review, this Court must give great deference to the district court's decision, since the trial judge had the opportunity to listen to the

* Of the Second Circuit, sitting by designation.

tone of the argument as it was made, and was in a position to observe the effect that it had upon the jury. *See Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985) (where mixed questions of law and fact exist, the determination of which standard of review to use on appeal often turns upon "a determination that, as a matter of sound administration of justice, one judicial actor is better positioned than another to decide the issue in question").

In deciding issues of this genre, we have clearly elucidated the standard:

> In deciding whether a new trial is required—either because prosecutorial misconduct likely affected a trial's outcome or to deter such misconduct in the future—we consider the severity of the misconduct, whether it was deliberate or accidental, the context in which it occurred, the likely curative effect of the judge's admonitions and the strength of the evidence against the defendant.

*United States v. Ingraldi,* 793 F.2d 408, 416 (1st Cir.1986). *See also United States v. Glantz,* 810 F.2d 316, 320 (1st Cir.1987) (citing *United States v. Ingraldi,* 793 F.2d at 416), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987); *United States v. Cox,* 752 F.2d 741, 745 (1st Cir. 1985); *United States v. Capone,* 683 F.2d 582, 586 (1st Cir.1982). Upon evaluation of the remark and of the district court's findings in light of this standard, we conclude that the district court's decision denying a new trial was not error.

The statement can be reasonably construed as accidental, not deliberate, in the sense that there is nothing to suggest that it had been planned in advance. *See Capone,* 683 F.2d at 586. Moreover, it is reasonable to conclude that it was made only in response to a continuing thread of the defense's argument. As the district court stated,

> I deny the motion for mistrial. I didn't interpret Mr. Kelly's remark—while the

tone was argumentative, it mirrored some of the tone of Mr. Walker's argument.

> · · · · ·

> On the other hand, I am going to give the instruction that I would ordinarily give and perhaps emphasize even more strongly in my own tone regarding the fundamental importance of the presumption of innocence and the fact that it stays with the defendant throughout the case. . . .

> · · · · ·

> As I said, I will directly address in my instructions both the importance of the nature of the presumption of innocence and the right to remain silent. And I think, if there is any correction or cure needed, it will be sufficient.

Moreover, because the district court did indeed give strong instructions to the jury about the presumption of innocence and the right not to testify, we believe that the instructions were sufficient to cure any possible misinterpretation of the remark by the jury.

In *Glantz,* we said that if, "in the circumstances of the particular case, the language used was [not] manifestly intended [n]or was of such a character that the jury would naturally and necessarily take it to be comment on the failure of the accused to testify," *Glantz,* 810 F.2d at 322, a new trial is not required. Here, the offending remark occurred after defendant's closing argument, during which defendant's counsel had repeatedly stressed the dangers inherent in convicting an "innocent man." In this context, the reference to "defendant, James Turner, who sits so innocently over there," would most likely have been understood by the jury as a sarcastic reference by the prosecutor to the "innocence" theme of defense counsel's argument, rather than as a comment upon the failure of the accused to testify.[1]

---

1. The relevant portion of the prosecutor's argument in rebuttal was as follows:

> But the conclusion which [defense counsel] wants you to draw from all of this, ladies and gentlemen, is that the photo identifications and the in-court identification are not worthy

of being trusted, are unreliable, that you've somehow got a situation here, ladies and gentlemen, where the government has the wrong man.

> Ladies and gentlemen, I submit to you on the evidence that you've heard, that that is just

While the defense makes various other arguments with regard to the *Ingraldi* standard, we fail to find merit in any of them. We accept the district court's view that the purpose of the remark was to "mirror [ ] some of the tone of [defense counsel's] argument." Moreover, we find that, if any harm resulted from the prosecutor's remark, the district court's instruction was a sufficient cure. *See Bowdine v. Douzanis*, 592 F.2d 1202 (1st Cir.1979). A new trial is not required.

## III  *PRETRIAL IDENTIFICATIONS*

■ Defendant's other assignment of error is that the district court erroneously allowed into evidence two photospread identifications, as well as an in court identification. Defendant claims that as Agent McNally showed the witnesses a photospread consisting of six photographs, he suggested that Turner was pictured in one of the included photos. The first witness testified that the agent said, "look [the photospread] over and whoever I thought was the man in the car to tell him who it was." According to the second witness, McNally said to look at the photospread and "then pick out a picture of the description of the person who was driving the car."

The district court relied upon *Gullick v. Perrin*, 669 F.2d 1, 5 (1st Cir.1981), to support its allowance of the photospread identifications. In *Gullick*, this Court held that it was permissible for an officer in a line-up situation to say "we think we got the one," and allowed the statement because it only pointed out the obvious—that the suspect was one of the persons in the lineup. Defendant argues that McNally's statements implied that the agent *knew* that the suspect had been apprehended, not that the police *thought* that they had him, thus placing the statement outside the *Gullick* parameter.

The defendant's argument is, at best, weak. It is the jury's responsibility to evaluate the credibility of the evidence presented, therefore, it is only in extraordinary cases that identification evidence should be withheld from the jury. This is not such a case. Although the written statements of both witnesses reflected evidence of McNally's influence, in that they contained dates of counterfeit transactions which McNally believed to be correct but which were later proven false, this goes only to the weight to be given to the evidence, not to its admissibility. The same holds true for the evidence that one witness was only thirteen years old, while the other was on probation.

Therefore, the district court was correct in holding that, even if the agent's statements were suggestive, they were not impermissibly so. The procedure employed by McNally did not impermissibly focus attention on a particular person, consequently Turner's rights were not violated. McNally's actions were not more suggestive than those which we permitted in *Gullick*.[2]

For these reasons, we affirm the district court's decision to permit admission of both out of court photospread identifications, as well as its decision not to grant a new trial on the basis of a comment made during rebuttal by the prosecutor.

*Affirmed.*

---

not worthy of belief. Number one, Mr. Duprey and Mr. Smith who came in here, who both identified the defendant, who are both friends and acquaintances of the defendant, we … [didn't] go out and find these people. They are one who came in and told you … [that] this defendant James Turner, who sits so innocently over there, … [had given or passed] the bills onto them.

**2.** Because we hold that the out of court photospread identifications were properly admitted into evidence, we need not address defendant's contention that an in court identification of him by one witness was inadmissible because it could not be shown to have had an independent source.