**UNITED STATES of America, Appellee,**

v.

**David ALEXANDER,**
**Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Everton KNIGHT, Defendant, Appellant.**

**Nos. 88–1081, 88–1082.**

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1989.

Decided Feb. 22, 1989.

Gustavo Adolfo Del Toro, by Appointment of the Court, for defendant, appellant Everton Knight.

Frank Pola, Jr., Hato Rey, P.R., by Appointment of the Court, for defendant, appellant David Alexander.

Jorge E. Vega–Pacheco, Asst. U.S. Atty., Crim. Div., San Juan, P.R., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for the United States.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

COFFIN, Circuit Judge.

Appellants were convicted of several charges arising out of the attempted burglary of a supermarket in Fajardo, Puerto Rico. They raise a number of alleged errors on appeal, none of which we find to merit reversal.

## I.

The facts, viewed in the light most favorable to the government, are as follows.[1] Late on the night of July 19, 1986, a police officer sitting in his car in the parking lot of the Amigo Supermarket heard sounds coming from the roof of the store. He subsequently saw the shadows of two persons descending from the building. He did not follow them.

Officers investigating the incident discovered a hole cut into the roof of the supermarket. They also found a variety of explosives materials, magazines, and briefcases containing tools, drills, batteries, handkerchiefs, a military cap and work gloves. Other items, including a receipt from the Amigo Supermarket and a carton of "Sunny Delight" drink, were taken from a little wooden house next to the supermarket. Additional explosives material was found inside a paper bag next to the house.

A fingerprint expert who examined the evidence concluded that latent prints found on one of the batteries were appellant Alexander's, whose prints were on file with the government. A body building magazine found on the roof of the store carried four latent fingerprints made by appellant Knight, whose prints also were in the government's files. A latent palm impression on another magazine matched appellant Alexander's palm print.

Both appellants were arrested in St. Croix, Virgin Islands, where they lived. Among the items seized from appellant Alexander's home pursuant to a search warrant were a wire crimper, a blue piece of cloth, and a blasting cap similar to the ones seized at the Amigo Supermarket. An expert testified that the marks on several blue wire terminals that were found attached to the batteries seized at the supermarket were made by the crimper found at Alexander's home. Alexander, who worked as an electrician's helper, had purchased a 12–volt battery on June 8, 1986. The blue cloth taken from his home matched a face mask found at the scene of the crime, and an expert testified that they could have come from the same garment. Another expert stated that laboratory tests showed that limb hairs found at the scene could have come from appellants' bodies.

---

1. Our summary of the facts is drawn largely from the government's brief, verified when possible by the trial transcript. We were unable to check the accuracy of every assertion because the record on appeal inexplicably contains the transcript for only four of the seven days of trial. Appellants have not challenged the government's version of the evidence presented at trial.

The supermarket's manager, Pacheco, testified that at about 8 p.m. on the night of the attempted break-in he had observed two suspicious individuals come into the store. The two men left a package in his office, where he had been counting part of the day's receipts. Pacheco stopped counting the money, closed the safe, and called the meat manager, Figueroa, to the front of the store. Pacheco watched the two men choose several items, including a package of multiple cartons of orange juice. One of the men, later identified as Alexander, went outside while the other one stayed behind to pay. Pacheco stated that Knight was wearing a military-type hat and pants. Pacheco also testified that the rooftop hole discovered by police officers had been cut through the ceiling in his office.

The meat manager, Figueroa, testified that after he was called to the front of the store by Pacheco he stood by the supermarket's main entrance door and observed Alexander sitting on a bench outside. He also observed Knight conduct his transaction at the cash register, and then retrieve the package that had been left in Pacheco's office.

Both Pacheco and Figueroa separately identified appellants in photospreads as the individuals they had seen in the store on the night of July 19. Two former employees of the Virgin Islands Seaplane Shuttle, an airline that flies between the Virgin Islands and San Juan, also identified Alexander. One airline employee, Glenn Millington, was working as a ticket agent on July 19, 1986, and testified that he had prepared Alexander's ticket. The other employee, Mary Freeman, testified that her duties included recording the weight of passengers. She recalled seeing Alexander board a flight from St. Croix to San Juan, and recording his weight at 180 pounds.

Alexander filed a pretrial motion to suppress the identifications on the ground of "impermissible suggestiveness," and Knight later filed a document joining the motion. After a suppression hearing in which Alexander presented four witnesses—the two airline employees and two agents of the United States Bureau of Alcohol, Tobacco and Firearms—the district court denied the motion. Knight neither called his own witnesses nor cross-examined those called by Alexander. The four individuals who had viewed the photospreads repeated their identifications in court.

The jury found defendants guilty on all charges. Alexander and Knight both were charged in two counts: conspiracy to maliciously damage or destroy personal property by means of an explosive, and aiding and abetting in a malicious attempt to damage and destroy property used in an activity affecting interstate commerce. Alexander also was charged with being a convicted felon in possession of explosives that had traveled in interstate commerce, and Knight was charged with possessing the same explosives while being under charges for a crime punishable for a term exceeding one year.

In their appeals, both defendants challenge as unconstitutional the procedures used in their out-of-court identifications. Appellant Alexander also claims the court erred in denying his motion for acquittal under Fed.R.Crim.P. 29, and appellant Knight claims that the court improperly allowed the government to hold available for impeachment a significant piece of evidence that it had been unable to locate until after the trial had begun. Both defendants challenge the district court's admission of certain pieces of evidence, including fingerprints.

We turn now to our discussion of these issues.

## II.

Alexander and Knight claim that the identification procedures used by the government in this case were so suggestive that they were deprived of their right to due process. *See Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Alexander contends that at least one witness who identified him was shown a mug shot of him before she viewed a photospread, and he further claims that the photospread was prejudicial

because he was the only one pictured with an earring. Knight similarly complains that the photospread was prejudicial because he was the only one who was pictured with a hat, and witnesses had reported seeing a person wearing a hat. Knight also suggested that the spread introduced into evidence did not represent what was shown to witnesses because there was tape on the back of several photographs covering the witnesses' signatures. Knight's apparent claim is that the photospread was tampered with after the witnesses viewed it.

In determining whether an identification procedure violates the due process right of an accused, the "central question [is] whether under the 'totality of the circumstances' the identification was reliable," *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), for "reliability is the linchpin in determining the admissibility of identification testimony," *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Thus, even if a photo-identification procedure could be termed unnecessarily suggestive, a court need not suppress the identification unless it lacked a sufficient basis for reliability. The Supreme Court has suggested several factors to consider in assessing the reliability of identification testimony:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382.

■ An application of these factors to this case demonstrates that the court did not err in allowing the identification testimony into evidence. With regard to Alexander, each witness had ample opportunity to observe him on the day of the crime. The two airline employees dealt directly with Alexander as he made arrangements to fly from St. Croix to San Juan. Millington specifically recalled that his uncle travelled to Puerto Rico on the same day he saw Alexander, and he further remembered that Alexander weighed his carry-on bag before boarding. Freeman testified that, in connection with her duty to balance the plane before its departure, she wrote down Alexander's weight and saw him take a seat at the front of the plane, where more passengers were requested to sit. Freeman and Millington made their identifications on August 8, less than three weeks after the attempted burglary.

The supermarket employees, Pacheco and Figueroa, also testified that they had seen the two men clearly. Pacheco, in particular, had direct interactions with them when they left a package at his office and Knight retrieved it. Both Pacheco and Figueroa watched Alexander and Knight for a sustained period of time, and both made their photo identifications on August 6 or 7, shortly after the crime. All of the witnesses made their identifications independently, without knowledge of what anyone else had done.

Appellants' complaints about the photospread do not undercut the reliability of the witnesses' identifications. The record does not support Alexander's assertion that Freeman was shown a mugshot before viewing the photospread. In addition, although Alexander was the only one in the spread wearing an earring, Millington explicitly testified that he would have made the identification regardless of the earring. Freeman similarly testified that "his face stayed with me." Alexander does not dispute the government's representation that the photographs shown to the witnesses all were of the same approximate age and facial characteristics.[2] That being so, the fact that the defendant's photo contained a

---

2. The government states that the photospread consisted of 30 photographs divided into five folders, each containing six photos of black males. The exhibit containing the photospread was not included in the record on appeal.

We note that the supermarket manager, Pacheco, testified that the men in two of the 30 photographs looked to him as if they could be caucasian.

unique characteristic does not render the identification constitutionally deficient, particularly when the indicia of reliability are as strong as they are in this case. *See, e.g., United States v. Thurston,* 771 F.2d 449, 452–53 (10th Cir.1985) (identification found reliable where defendant's photograph was the only one with beard and braided hair); *United States v. Bice–Bey,* 701 F.2d 1086, 1089–90 (4th Cir.1983) (reliable identification even though defendant was only woman portrayed with dred locks and head covering).

■ Knight's separate claim merits little attention; indeed, it appears that it may well have been waived. The record indicates that he challenged the identification procedure in the district court only by means of a document in which he generally joined Alexander's motion to suppress. The district court was given no details of Knight's separate claim, and Knight presented no argument at the suppression hearing. Even if Knight's claim were not waived, we would find that the contested procedures survive a due process scrutiny for reasons similar to those discussed above with regard to Alexander. That Knight was wearing a hat in the photograph shown to the witnesses, and also was described as wearing a hat on the night of the crime, did not affect the reliability of the identifications.[3]

### III.

■ Appellant Knight claims that the district court erred in ruling that the government could use for impeachment purposes a Customs Declaration Card that the U.S. Customs Service had been unable to locate until after the fifth day of trial. Relying on the unavailability of the card, which is required upon entry into the United States from the Virgin Islands, Knight's counsel told the jury in his opening statement that he would produce evidence showing that Knight had never been to Puerto Rico before his arrest.

After careful consideration, the district court ruled that the government could not use the customs card in its case-in-chief but could use it to impeach the defendants. The card was never introduced into evidence.

Knight's claim is that the government's ability to impeach him through use of the card prevented him from testifying on his own behalf in violation of his constitutional rights and also damaged his credibility with the jury because he was unable to carry through on his promise of evidence showing that he previously had never been to Puerto Rico.

We conclude that the district court properly resolved this difficult situation. In *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971), the Supreme Court held that the privilege to testify in one's own defense does not include the right to commit perjury. That principle is applicable here. In essence, Knight claims the court erred because he was deprived of the opportunity to tell the jury that he had never been in Puerto Rico because if he did the government would present documentary evidence conclusively showing that he had lied.[4]

This would be a different case if Knight had testified and exposed himself to impeachment before the government unexpectedly sought to introduce the card, *see United States v. Sukumolachan,* 610 F.2d 685, 687–88 (9th Cir.1980), or if the government intentionally had withheld the document. In this case, however, the district court expressly found that the government had made good faith efforts to locate the card earlier, and the defendant was able to make the reasonable choice to forego testifying in order to avoid impeachment. We would be remiss to hold that counsel's un-

---

**3.** The government asserts that the hat worn by Knight in the photograph differed significantly from the description given by Pacheco and Figueroa of the hat worn by Knight in the supermarket. Figueroa testified that the hats were similar. We are unable to make our own comparison between the photo and the description given by the witnesses of a military cap because the photospread is not a part of the record on appeal.

**4.** We emphasize that Knight has not challenged the authenticity of the card, which contains his signature.

fulfilled promise to the jury that "we will bring you evidence that Mr. Everton Knight had never been in Puerto Rico before" is sufficient "justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." *Walder v. United States*, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954).

## IV.

We reject summarily the remainder of appellants' claims of error. Our discussion of the facts in Part I shows that there was more than sufficient evidence establishing Alexander's guilt, and supporting the court's refusal to grant his motion for acquittal. We find no abuse of discretion in the district court's decisions to admit the pieces of evidence challenged by appellants, including fingerprints found on two magazines, the magazines themselves, and a fingerprint found on one of the batteries.

AFFIRMED.