**UNITED STATES of America, Appellee,**

v.

**Kent E. GRAY, Defendant, Appellant.**

**No. 91–1151.**

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1992.

Decided March 4, 1992.

---

Jeffrey M. Smith, by appointment of the Court, with whom Peters, Smith & Moscardelli, was on brief for defendant, appellant.

Stephen A. Higginson, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief for appellee.

Before TORRUELLA, Circuit Judge, ALDRICH, Senior Circuit Judge, and SELYA, Circuit Judge.

TORRUELLA, Circuit Judge.

Following a two-day jury trial, appellant Kent E. Gray was convicted of five counts of bank robbery and one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a). Gray appeals, claiming four alternative grounds for reversal. Finding no merit in Gray's claims of error, we affirm.

## I

In a period of approximately two months, between May 7, 1990 and July 13, 1990, six federally insured banks in downtown Boston were robbed. On July 26, 1990, appellant Gray was arrested and indicted for these robberies.

At trial, the government's evidence consisted primarily of the testimony of six bank tellers. Bank teller Jessica Munroe testified that she was robbed on May 7, 1990, while working at the Boston Five Cents Saving Bank, 10 School Street, Boston. The robber approached her window and handed her a note demanding the money in the teller drawer or, if she refused, she would be shot. She complied with the robber's demand, giving him approximately $1,340. Ms. Munroe recognized the surveillance photograph of her robber, which was admitted into evidence and published to the jury. Ms. Munroe further testified that on August 2, 1990, she selected a photograph of appellant Gray from a set of seven photographs of similar appearing black males. She made an in-court identification of Gray as the robber.

Bank teller Maria Silva testified that on May 11, 1990, Gray robbed her while she worked at the First Mutual Bank of Boston, 77 Franklin Street. The robber ap-

proached her and showed her a note that read "Give me all your money and you won't get shot." She gave the robber $1,753. She recognized the surveillance photograph of her robber, which was admitted into evidence and published to the jury. Ms. Silva then testified that on August 2, 1990, she selected a photograph of Gray from a set of seven photographs of similar appearing black males. She also made an in-court identification of Gray as the robber.

Bank teller Allison Noble testified that on June 11, 1990, appellant Gray robbed her while she was working at the Boston Five Cents Savings Bank, 77 Milk Street, Boston. She was passed a note that read "Pass me all the money and you won't get shot." The robber took $102.00 and fled. She recognized the surveillance photograph of her robber, which was admitted into evidence and published to the jury. She also testified that on August 2, 1990, she selected a photograph of appellant Gray from a set of seven photographs of similar appearing black males. However, upon selecting Gray from this photo line-up, Ms. Noble stated that she thought the individual in the photograph was the person who robbed her, but she could not be absolutely certain. Ms. Noble identified appellant Gray in court.

Krista Capprini testified that on June 11, 1990, she was robbed while working as a bank teller at the First Federal Savings Bank, 19 School Street, Boston. The robber took $900.00, after telling her that he would shoot her if she attempted to activate the alarm. She recognized the surveillance photograph of her robber, which was admitted into evidence and published to the jury. She then testified that on August 1, 1990, she selected a photograph of Gray from a set of seven photographs of similar appearing black males. She also identified him in court.

Ingrid Stewart testified that Gray robbed her while she was working at the Bank of Boston, 20 Custom House, Boston. The robber showed her a note that read "$100 $20 and you won't get shot." A subsequent audit revealed that the robber had stolen $2,160. Ms. Stewart recognized the surveillance photograph of her robber, which was admitted into evidence and published to the jury. She then testified that on August 1, 1990, she selected a photograph of appellant Gray from a set of seven photographs of similar appearing black males. She also identified him in court.

Lorna Outerbridge, a bank teller at the Bank of New England, testified that she was given a note by appellant Gray which read "Give me your money. No dye." While opening her drawer to give money to the robber, Ms. Outerbridge activated the bank alarm. Another teller reacted by inquiring why the surveillance cameras were moving. Appellant Gray then turned and fled. Ms. Outerbridge recognized the surveillance photograph of her robber, which was admitted into evidence and published to the jury. She further testified that on July 31, 1990, she selected a photograph of appellant Gray from a set of seven photographs of similar appearing black males. She identified Gray in court.

## II

Gray appeals his conviction asserting that (1) the district court's instructions on eyewitness identification were erroneous and inadequate; (2) that the district court committed error in permitting his in-court identification; (3) that the district court committed error when it denied his motion to sever; and (4) that he was deprived of the effective assistance of counsel.

### A. *The District Court's Instructions*

Appellant's first assignment of error is that the district court's instructions on eyewitness identification were erroneous and inadequate. The district court charged the jury with the following instruction about the nature of eyewitness identification:

[I]dentification is, of course, a very delicate type of evidence. There are, I don't know, a couple of billion people in the world, and a finite number of arrangements of noses, eyes, and mouths, and so forth. We know that there are going to obviously be a lot of people who look like

a lot of people. And you have to make a judgment about how reliable the evidence of identification is with that in mind and also giving consideration to the appearance of the witnesses.

You should have in mind the forthrightness or lack of it, the witness's facial expression, and vocal presentation that goes with the testimony ... You should consider the opportunity that the witness had to make the observation. In this case, they all said they were within touching distance of the robber, which is about as good an opportunity as you are going to get, I suppose, but you may consider also the emotional state in which the tellers were, and you [may] consider their emotional state to interfere (sic) with their memory, or did it heighten them. You are to give some consideration to your knowledge of human nature and how people behave, whether the circumstances of the situation were such to make the identification less reliable, or did it engrave the image on the memory of the teller. These are all decisions for you to make.

Tr. Vol. II at 170.

Appellant's trial counsel did not object to the instructions given to the jury nor did he tender any instructions. Appellant concedes that in the absence of a contemporaneous objection, our standard of review is for plain error, that is, error that undermines "the fundamental fairness of the trial." *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985); *see also Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) ("[I]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.").

■ Appellant contends that the district court committed error in not giving the "model charge in *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972)" because the evidence on the critical issue of identification "consisted essentially of uncorroborated identification testimony by [the bank tellers]."[1] We find no merit in appellant's argument.

First, the eyewitness testimony by the bank tellers was not uncorroborated, as appellant mistakenly claims. The government introduced surveillance photographs of the robber taken during the robberies of each bank, and these photographs were published to the jury and admitted into evidence without objection. Furthermore, the bank tellers testified that they had each selected a picture of appellant as the person who handed them a note demanding money from a photospread prepared by the Federal Bureau of Investigations ("FBI").

Second, appellant misconstrues *Telfaire;* it simply does not mandate that the jury be charged with an instruction containing *specific* language. *Telfaire* holds that if an eyewitness identification instruction is requested, the district court should give it; otherwise, its refusal to do so *may* constitute plain error. More significantly, the district court's instructions complied with the general cautionary charge suggested in *Telfaire.* The trial judge initially emphasized that identification testimony is "a very delicate type of evidence" and then he proceeded to specifically delineate potential factors which make identification testimony less reliable than other evidence.[2]

■ Appellant also argues that the district court's final substantive instruction effectively shifted the burden of proof. The court instructed:

1. Appellant's Brief at 10–12.

2. Tr. Vol. II at 170. We decline appellant's invitation to adopt a mandatory rule requiring trial courts to give a specific instruction about identification testimony, even if no such instruction is requested. We have refused to compel district courts to give a cautionary instruction on witness identification, even if one is requested. *United States v. Angiulo*, 897 F.2d 1169, 1206 n. 20 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990); *United States v. Kavanagh*, 572 F.2d 9, 12 (1st Cir. 1978). Although there may be a dispute about eyewitness identification in a particular trial that may require such a cautionary instruction, in this case there was no such danger of misidentification.

Your sole interest is to find the truth from the evidence in the case, and when I say truth, I don't mean absolute or cosmic truth, but such truth as is established in your minds to be beyond a reasonable doubt.

Tr. Vol. II at 172. Appellant asserts that this instruction either shifted the burden of persuasion or the burden of proof away from the government by imposing upon the appellant a burden to show or present evidence to establish his innocence beyond a reasonable doubt. Appellant argues that at no time did the trial court instruct the jury that the government's burden never shifts or that the law does not require a defendant to produce any evidence.

Appellant's claim is simply not accurate. The trial judge instructed the jury that the defendant had "no burden of establishing his innocence"; instead, the government had the burden "to establish the guilt of the defendant by proof beyond a reasonable doubt." [3] There was little, if any, likelihood that the appellant was prejudiced by this instruction. *See United States v. Winn,* 948 F.2d 145, 160 (5th Cir.1991) (instruction asserting that sole interest of the jury was "to seek truth" did not confuse the jury as to burden of proof). Viewing the district court's instructions as a whole, and considering that appellant's trial counsel did not object, we find no plain error which could have arguably undermined the "fundamental fairness of the trial." *United States v. Steven McGill,* 952 F.2d 16, 18 (1st Cir.1991) (citing *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985)).

■ Nonetheless, the district court's instruction on eyewitness identification contains one arguable imperfection, but we hold that it had no prejudicial effect on the outcome of the trial. Although the district court's comment that the bank tellers had "about as good an opportunity as you are going to get" to see the robber is hardly neutral, we believe that the remark was counterbalanced by the overall eyewitness identification instruction given by the court. The eyewitness identification instruction was lengthy and cautionary, noting the sensitive nature of identification evidence and emphasizing some of the pitfalls connected with eyewitness identification. The district court concluded the instruction by specifically charging the jurors that it was their sole responsibility to evaluate the reliability of the identifications and to determine, the facts.

The judge further instructed the jurors that: "[I]f I have said anything at all in either these instructions or in the course of the trial, that you think I have a view one way or the other, disregard it." [4] This last instruction was of particular importance since it forcefully reminded the jury that the judge's comment was not binding on them. Given the limited nature of the comment and the curative instruction which immediately followed the comment, we discern nothing in the record of this case that approaches a fundamental error warranting the reversal of appellant's conviction.[5]

### B. *The In–Court Identifications*

Appellant contends that his identification in court by each teller was unnecessarily suggestive, thereby violating his right to due process. *See, e.g., United States v. Alexander,* 868 F.2d 492, 495 (1st Cir.), *cert. denied,* 493 U.S. 979, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989). Appellant's assignment of error can be disposed of briefly.

■ To determine whether an identification procedure violates due process, we apply a two-prong test. *United States v. Bouthot,* 878 F.2d 1506, 1514 (1st Cir.1989); *Judd v. Vose,* 813 F.2d 494, 498 (1st Cir. 1987); *Perron v. Perrin,* 742 F.2d 669, 675

---

3. Tr. Vol. II at 167. *See also id.* at 164 ("A defendant is presumed innocent until his guilt is established beyond a reasonable doubt ...").

4. Tr. Vol. II at 171.

5. *See United States v. Dwyer,* 843 F.2d 60 (1st Cir.1988) (district court's cumulative errors in giving objected to jury charge regarding the credibility of defendant's testimony, its comments which bolstered the credibility of government witness and informing the jury that the crime of conspiracy was more culpable since it involved two or more people required reversal of defendant's conviction).

(1st Cir.1984). The first prong requires us to determine "whether the identification procedure was impermissibly suggestive." *Bouthot*, 878 F.2d at 1514. The second prong

> inquires whether, under the totality of the circumstances, the suggestiveness is such that there is a very substantial likelihood of irreparable misidentification. This determination is based on the factors described in *Neil v. Biggers*, 409 U.S. 188, 199–200 [93 S.Ct. 375, 382–383, 34 L.Ed.2d 401] (1972) . . .

*Id.* Since the in court identification of appellant was not impermissibly suggestive, we need not reach the second part of the test.

■ Appellant's in court identification served as an *independent* source of identification which followed two prior pre-trial identification procedures, none of which appellant challenges. The bank tellers recognized appellant as the person who robbed or attempted to rob them in the surveillance photographs taken at the scene of each crime. Two weeks after their respective banks were robbed, each of the tellers picked a photograph of appellant from a photospread prepared by the Federal Bureau of Investigation. The reliability of these identification procedures is obvious. In sum, since the in court identification followed two other corroborating identifications, appellant has not carried his burden of showing that his in court identification was impermissibly suggestive under the due process clause.

## C. *Denial of Appellant's Motion to Sever*

■ We review the denial of a motion to sever under the abuse of discretion standard. *United States v. Font–Ramírez*, 944 F.2d 42, 45 (1st Cir.1991); *United States v.*

*Olivo–Infante*, 938 F.2d 1406, 1409 (1st Cir.1991). The denial of a motion to sever should not be reversed unless the challenger makes "a strong showing of prejudice." *Font–Ramírez*, 944 F.2d at 45 (citations omitted).

■ Appellant asserts that the joinder of five counts of bank robbery and one of attempted robbery was improper. According to appellant, the alleged similarities envisioned by Rule 8(a) of the Federal Rules of Criminal Procedure [6] were outweighed by a number of differences in descriptions of the alleged perpetrator.[7] We find that the opposite is true.

There are many similarities between the counts. The charges are the same—six counts charging violations of 18 U.S.C. § 2113(a)—and all involved similar institutional victims. The robberies occurred within two months, all in downtown Boston. Gray also exhibited a similar *modus operandi* during the six bank robberies, often wearing the same shirt and wearing a baseball cap or chewing a white pen and in each case, demanding money by notes handed to the bank tellers. *See, e.g., United States v. Shue*, 766 F.2d 1122 (7th Cir. 1985), *cert. denied*, 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987) (joinder of bank robberies proper).

Appellant alleges that he has demonstrated the prejudicial effect of joinder of the bank robbery offenses because, in his view, the jury was confused. During deliberations, the jurors requested "a list of witnesses in the order of appearance . . . and in which counts they were testifying." [8] The following colloquy with the foreman took place:

> THE FOREMAN: It would help us to remember which witness was which.

---

**6.** Rule 8(a) provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

**7.** Specifically, appellant relies on the somewhat inconsistent height and face hair descriptions

given by the tellers. Most of the tellers stated that the robber had a moustache and was less than six feet tall while one of them stated that the robber had a small beard and another stated that the robber was about five feet and four or five inches tall. (Tr. Vol. I at 95; Tr. Vol. II at 19, 22, 49, 89, 106).

**8.** Tr. Vol. II at 174.

Some people are putting names to certain people and have an idea where they came in order.

THE COURT: You want it on paper?

THE FOREMAN: Yes, that is better.

THE COURT: Any objection ...

DEFENSE COUNSEL: Not at all....

Tr. Vol. II at 176. Whereupon the court furnished the jury with a list of the tellers, specifying the number of the count as to which each teller had testified. Appellant argues that these facts show that the jury was confused.

We believe appellant's claim constitutes nothing but speculation. Assuming that the request for a list of witness demonstrates that the jury was confused, appellant has nevertheless failed to show that he was strongly prejudiced by the denial of his motion to sever. *Font–Ramirez*, 944 F.2d at 45; *Olivo–Infante*, 938 F.2d at 1409. The evidence in this case overwhelmingly indicated a common plan as to each count. Additionally, the district court properly instructed the jury that each count of the indictment stated a separate crime and thus each had to be considered separately.[9] The district court's decision not to sever the counts was a proper use of its discretion.

D. *Ineffective Assistance of Counsel*

■ Time and again we have held that a claim of inadequate representation will not be resolved on a direct appeal when the claim has not been raised in the district court, unless the critical facts are not in dispute and a sufficiently developed record exists. *See, e.g., United States v. Natanel*, 938 F.2d 302, 309 (1st Cir.1991). Appellant argues that the circumstances of this case are such that the record is sufficiently developed. We disagree and decline to consider appellant's claim.

Appellant Gray bases his claim of trial counsel's ineffectiveness on interpretations of the trial record that clearly are open to

dispute and this fact finding is better done in the first instance at the district court.[10] *See, e.g., United States v. Hoyos–Medina*, 878 F.2d 21, 22 (1st Cir.1989) ("Fairness to the parties and judicial economy both warrant that, absent extraordinary circumstances, an appellate court will not consider an ineffective assistance claim where no endeavor was first made to determine the claim at the district level.").

*Affirmed.*

have shifted the burden of proof." Appellant's Brief at 27–28. If they have merit, which we do not decide, their effect must be for the district court, at least in the first instance.

---

9. Tr. Vol. II at 172.

10. Among the disputable claims is one based on appellant's theory that the jury was confused during deliberations and another one based on appellant's claim that the trial judge "appears to