April 9, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-1855

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JUAN C. GUZMAN-RIVERA,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. H ctor M. Laffitte, U.S. District Judge]
 

 

 Before

 Torruella, Selya and Cyr,

 Circuit Judges.
 

 

 Roxana C. Matienzo-Carri n for appellant.
 
 Jos A. Quiles-Espinosa, Senior Litigation Counsel, with
 
whom Daniel F. L pez-Romo, United States Attorney, was on brief
 
for appellee.

 

 April 9, 1993
 

 TORRUELLA, Circuit Judge. Appellant Juan C. Guzm n-
 

Rivera and two co-defendants were charged with aiding and

abetting each other in the assault and battery of a postal

contractor and robbing him of mail,1 unlawful possession and

retention of United States treasury checks,2 and use of a

firearm in the commission of these crimes.3 The co-defendants

never went to trial. One was declared incompetent, and the other

accepted a plea bargain. Appellant now argues that the

government offered unreliable evidence of appellant's identity,

and that the evidence against him was therefore insufficient to

support his convictions. Because we find that the district court

properly admitted the disputed evidence, and that a rational jury

could find appellant guilty beyond a reasonable doubt, we affirm

the verdict.

 BACKGROUND
 

 Government witness Ramos-Cotto, a mail carrier,

testified to the following. On August 2, 1991, two men

approached him while he was distributing mail. One of the men,

later identified as appellant, pointed a .38 caliber revolver at

Ramos-Cotto's neck, and threatened to kill him if he moved. In a

violent exchange, appellant took the keys to the mail vehicle and

the mail that was in Ramos-Cotto's hand. Finally, appellant and

the other man pulled Ramos-Cotto across the street, and appellant

said "start running downhill or I'll kill you." While running,

 

1 18 U.S.C. 2, 2114.

2 18 U.S.C. 2, 510(b).

3 18 U.S.C. 924(c)(1).

Ramos-Cotto heard the car leave. 

 After the incident, Ramos-Cotto saw and recognized

appellant on two separate occasions while distributing mail on

the same route. Approximately two weeks later, upon receiving

confidential information that appellant might be in certain

places, Ramos-Cotto and four postal investigators went to these

locations to look for him. After passing by approximately five

of the suggested locations, Ramos-Cotto identified appellant

talking to three other people in a grocery store. The

investigators arrested appellant and one other individual.

 The government also introduced evidence that when the

police found the mail car, four hundred pieces of mail were

missing, including a number of social security checks. In

addition, after the robbery, the Dominican Republic's national

police apprehended one of the co-defendants attempting to cash

social security checks bearing a San Juan address.

 Appellant argues that we should reverse his conviction

for two reasons: (1) the government's evidence regarding

appellant's identity was unreliable, and thus, the district court

should not have admitted it; and (2) there was insufficient

evidence to sustain appellant's convictions. 

 DISCUSSION
 

 Appellant's first argument is a due process argument.

A district court deprives a defendant of due process by admitting

evidence of an identification that has proven "'so impermissibly

suggestive as to give rise to a very substantial likelihood of

 -3-

irreparable misidentification.'" United States v. Bouthot, 878
 

F.2d 1506, 1514 (1st Cir. 1989) (quoting Simmons v. United
 

States, 390 U.S. 377, 384 (1968)). Under the first prong of this
 

test, appellant must show impermissible suggestion by law

enforcement officials. See United States v. Gray, 958 F.2d 9,
 

13-14 (1st Cir. 1992); Bouthot, 878 F.2d at 1514.
 

 Appellant asks us to infer that the identification was

unduly suggestive for four reasons: (1) the search for appellant

occurred one month after the robbery and after co-defendants'

arrests; (2) the investigators arrested a second individual with

appellant who was later released; (3) the investigation revealed

no fingerprints belonging to appellant; and (4) Ramos-Cotto never

described appellant at the time of the robbery. These are all

good arguments that trial counsel made to the jury regarding

Ramos-Cotto's credibility. Although the record offers no

explanation for these circumstances, we cannot draw the sizable

inference that appellant seeks. 

 The record evidence shows that upon receiving

confidential information regarding appellant's whereabouts, the

postal investigators brought Ramos-Cotto to at least five

different public locations to look for him. (Transcript of Jury

Trial at 38-39). After visiting the fifth location, they passed

a grocery store where Ramos-Cotto saw and identified appellant.

Id. They then passed by a second time so that Ramos-Cotto could
 

identify him again. Id. The record exhibits no evidence that
 

the investigators controlled or manipulated the people that

 -4-

Ramos-Cotto would encounter during this search. Nor does the

record reveal that the investigators indicated to Ramos-Cotto in

any way that they believed appellant was the perpetrator. Ramos-

Cotto testified that he was at all times since the robbery able

to identify appellant as his assailant. Id. at 39-40. Indeed,
 

he testified that he identified appellant on two previous

occasions without the investigators, and that he promptly called

one of the investigators after the second sighting. Id. at 37-
 

40, 62. Based on these facts, we can find no undue suggestion by

law-enforcement officials.

 Since we do not find the identification impermissibly

suggestive, we need not reach the likelihood of misidentification

prong of the test. See Gray, 958 F.2d at 14. Even if we were to
 

reach that issue, however, it would not significantly bolster

appellant's argument. Under the second prong, we consider: (1)

the witness' opportunity to view the defendant during the crime;

(2) the witness' degree of attention at the time of the crime;

(3) the accuracy of the witness' prior description; (4) the

witness' level of certainty when identifying the suspect at the

confrontation; and (5) the length of time between the crime and

the confrontation. United States v. Alexander, 868 F.2d 492, 495
 

(1st Cir.), cert. denied, 493 U.S. 979 (1989). 
 

 In the present case, three of the five factors support

the reliability of the identification. Ramos-Cotto testified

that he stood right next to appellant, almost face-to-face,

during the robbery and thus had a significant opportunity to view

 -5-

him. (Transcript of Jury Trial at 39-40). Additionally, he

testified that he specifically focused on appellant during the

incident while appellant pointed a gun at him, and that he knew

at all relevant times that he could identify appellant, which he

did twice before the final confrontation. While Ramos-Cotto gave

no prior description of appellant and waited a month until the

final confrontation, the totality of the circumstances does not

mandate a finding of unreliability. As such, we are unwilling to

usurp the determination from the jury. See United States v.
 

Turner, 892 F.2d 11, 14 (1st Cir. 1989) (identification evidence
 

should be withheld from jury only in extraordinary cases).

 Appellant's second argument challenges the sufficiency

of the evidence against him. To overturn a jury's conviction

based on insufficient evidence, we must find that no rational

jury could conclude beyond a reasonable doubt that appellant

committed the crimes charged. United States v. Maraj, 947 F.2d
 

520, 522-23 (1st Cir. 1991). In doing so, we must review the

record in the light most favorable to the government and resolve

all credibility issues in favor of the verdict. United States v.
 

Angiulo, 897 F.2d 1169, 1197 (1st Cir.), cert. denied, 498 U.S.
 

845 (1990).

 Reading the record in this light, we find that

sufficient evidence existed to convict appellant. The bulk of

appellant's sufficiency argument concerns the reliability of the

testimony identifying appellant as the perpetrator. As noted

above, Ramos-Cotto testified that he had plenty of time to see

 -6-

appellant at the time of the crime and twice thereafter. He also

testified that he concentrated on appellant during the robbery

because appellant had the gun. (Transcript of Jury Trial at 54).

Ramos-Cotto looked for appellant in five public locations before

finding him at the grocery store. Appellant had ample

opportunity to cross-examine Ramos Cotto with respect to

appellant's identity. In fact, the trial transcript reveals at

least twenty pages of cross-examination on this very issue. A

jury could rationally choose to rely on Ramos-Cotto's

identification. We find no error in the ultimate verdict on this

ground.

 Appellant's other sufficiency argument fails as well.

Appellant argues that the government failed to show that the

social security checks confiscated from appellant's co-defendant

were the checks that appellant allegedly stole. Appellant's

argument fails because Ramos-Cotto testified that the four

disputed checks were among those taken during the robbery. Id.
 

at 41-42. He further testified that he recognized them because

they displayed his mail distribution route number and the date of

the robbery, and he recognized the names of the addressees as

individuals who receive mail on his route. Id. at 41. This
 

evidence was sufficient to show that the confiscated social

security checks were taken during the robbery at issue.

 Finally, after reviewing the remaining elements of the

charges, we find that the evidence presented at trial

sufficiently supported appellant's convictions. We affirm the

 -7-

verdict.

 Affirmed.
 

 -8-