**UNITED STATES of America, Plaintiff,**

v.

**Luis TORRES RODRIGUEZ, Defendant.**

**No. Crim. 97–247(SEC).**

United States District Court, D. Puerto Rico.

June 23, 1998.

Mark Irish, Asst. U.S. Atty., Criminal Div., Hato Rey, PR, for Plaintiff.

Joseph C. Laws, Federal Public Defender, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant Luis Torres Rodriguez's Motion to Suppress Identification and In Court Identification Testimony (**Docket # 32**). The Government filed an opposition to defendant's motion (**Docket # 43**). Defendant sought leave to reply to the Government's opposition, and did so (**Docket # 44**). For the reasons stated below in this Opinion and Order, defendant's Motion to Suppress Identification and In Court Identification Testimony (**Docket # 32**) is **DENIED.**

### Factual Background

The events giving rise to the above-captioned case occurred on July 27, 1997 when Mr. Dayn R. Smith returned with his wife and two children to their Fajardo home at around 10:45 p.m. As he approached the door of his home, Mr. Smith was ordered by a male voice to "get down on the ground, get down on the ground." Mr. Smith turned around to face the assailant and saw two

men, whom he described as Hispanic. One of the two men he identified is the co-defendant in the instant case, Mr. Jose A. Pagan Burgos, who had previously been an employee of Mr. Smith's and had come to his residence to do some yardwork. The man Mr. Smith identified as Mr. Pagan Burgos, with his face painted with red and white triangles, pointed a pistol at Mr. Smith and told him to open the door to his home. Mr. Smith complied with the assailant's request.

When Mr. Smith and the assailant were inside the home, the assailant demanded that Mr. Smith give him his money. Mr. Smith gave the assailant approximately $1,000 that he was carrying inside his pants pocket, which constituted proceeds from Mr. Smith's restaurant business. While Mr. Smith and the assailant were discussing whether Mr. Smith would turn off the foyer lights and accompany the assailant into the bedroom, one of Mr. Smith's children came into the house crying. Mr. Smith pushed his son out the door and back to his wife, Ms. Nancy Moon, who was waiting outside the home, along with a second Hispanic male.

While none of the family members saw the second assailant brandishing a weapon, he gestured under his windbreaker as if he were in possession of one. Ms. Moon had a clear view of the second assailant's face, which, unlike the first assailant's, was not painted, as he had made no attempt to conceal his face at that time; the second assailant stood only a few feet from Ms. Moon under the light. The second assailant, later identified by Mr. Smith and Ms. Moon as defendant Luis Torres Rodriguez, entered the house where Mr. Smith also got a clear look at his face. Then, the second assailant pulled his windbreaker jacket over his face. The first assailant demanded the keys to the family's BMW, and proceeded to rip out the telephone which was hanging on the kitchen wall. Both assailants then fled in the car.

Subsequently, co-defendant Pagan Burgos was arrested by local authorities and charged with the home invasion robbery of the Smiths' residence.

Around Labor Day of 1997, a friend of Mr. Smith and Ms. Moon told them that the second assailant, the man who turned out to be defendant Torres Rodriguez, reported to a building known as "Las Casitas" every Tuesday for parole or drug treatment. Mr. Smith and Ms. Moon have declined to identify the friend who informed them of defendant's whereabouts at that person's request, who apparently fears retaliation if his or her identity became public. Mr. Smith relayed the information to the police who told him that they would prepare and show them a line-up in the near future. Fearing that such line-up would not occur, Mr. Smith and Ms. Moon drove to "Las Casitas" on the Tuesday following Labor Day.

Mr. Smith and Ms. Moon borrowed a car with tinted windows, and Ms. Moon proceeded to immediately identify the defendant as he exited a vehicle. Mr. Smith did not immediately recognize the defendant, so he drove the car in front of "Las Casitas," apparently to get a better view of the individual. He observed the defendant talking to a security guard, and immediately recognized him as the second assailant. Upon doing that, Mr. Smith drove the car around the corner and called the Fajardo police; he then drove back to "Las Casitas" and watched the defendant until the police arrived and arrested him.

The F.B.I. subsequently took over the jurisdiction of the case, and on November 5, 1997, co-defendants Pagan Burgos and Torres Rodriguez were charged by a grand jury with violations of Title 18, United States Code, §§ 1951, 2119(1) and 2119(2).

The following day, November 6, 1997, Mr. Smith was shown five photographs, two of which depicted Pagan Burgos and Torres Rodriguez. Mr. Smith identified both defendants from their respective photographs. Ms. Moon also identified the defendants from their respective photographs.

**Defendant's Argument**

Defendant filed the instant motion challenging the propriety of the out-of-court identification by Mr. Smith and Ms. Moon. He argues that the defendant's identification by the victims outside of "Las Casitas" was impermissibly suggestive. While the defendant does not expand much further on this argument, beyond questioning the reliability of the informant, he is requesting that the

Court hold an evidentiary hearing to present evidence regarding the suppression of the identification testimony. In his reply to the Government's opposition to the Motion to Suppress, defendant, in passing, states that "[t]he court should also examine the propriety of the 'photographic lineup' in this case" because of their inherent unreliability.

**The Government's Response**

The Government argues, in turn, that the defendant's "reasoning for suppressing this identification is flawed because it is based only on cases which question the propriety of law enforcement arranged identification procedures." The Government argues that in cases of·eyewitness identification, the remedy of suppression is invoked to deter impermissible police interference and suggestion of the witness. It argues that when, as in the present case, the police were not involved in the identification of the perpetrator, suppression is not an appropriate remedy. The Government goes on to state that "since the police were not involved, the circumstances surrounding the identification could, at best, be used to impeach the identification." It asserts that the cases cited by defendant in support of his position are inapposite, insofar as they are all referring to impermissible police procedures, and do not involve the sort of independent identification that this case poses.

In the alternative, the Government argues that even if suppression were a proper remedy when there is no police involvement in the identification, that the Court should still find that the identification was neither impermissibly suggestive nor unreliable.

**Evidentiary Hearing**

 Defendant requests an evidentiary hearing to present evidence regarding the suppression of the identification testimony. However, defendant does not specify what facts he is seeking to discover in such a hearing that would aid the Court in its determination of whether to suppress the identification testimony at issue. In fact, it does not appear that the facts surrounding these identifications are at issue, as the defendant's and the Government's version essentially coincide.

As recently stated by this Court, "[i]t is clear, however, that ·the defendant is not entitled as of right to an evidentiary hearing." *United States v. Alegria,* 3 F.Supp.2d 151, 153–54 (D.Puerto Rico, 1998). Furthermore, as stated by the First Circuit,

> [E]videntiary hearings on motions are the exception, not the rule. We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion. Thus, a party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment.

*United States v. Isom,* 85 F.3d 831, 838 (1st Cir.1996), *quoting United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993). In addition, "a criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion." *United States v. Lewis,* 40 F.3d 1325 (1st Cir.1994), *quoting United States v. Panitz,* 907 F.2d 1267, 1273 (1st Cir.1990) (citations omitted).

In light of the above, it is clear that defendant is not entitled to an evidentiary hearing in which to present evidence regarding the suppression of the identifications at issue. Defendant has failed to meet his burden of demonstrating the need for a hearing on this matter.

**Applicable Law—Motions to Suppress Identification**

 In deciding whether a particular identification of a defendant should be suppressed, courts utilize a two-pronged test, as established by the United States Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972). First, the Court must determine whether the identification procedure used was impermissibly suggestive. Secondly, if the identification procedure is determined to be impermissibly suggestive, then the Court must determine if "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* The *Biggers* court listed the following factors to be considered in deciding the second prong of the inquiry:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id. See also United States v. Watson*, 76 F.3d 4, 7, fn. 1 (1st Cir.1996); *United States v. Guzman–Rivera*, 990 F.2d 681, 683 (1st Cir. 1993); *United States v. de Jesus–Rios*, 990 F.2d 672, 677 (1st Cir.1993); *United States v. Gray*, 958 F.2d 9, 14 (1st Cir.1992); *United States v. Maguire*, 918 F.2d 254, 263 (1st Cir.1990); *United States v. Bouthot*, 878 F.2d 1506, 1514 (1st Cir.1989).

The First Circuit Court of Appeals has held that "[b]efore excluding identification evidence, the court must be persuaded that there was 'a very substantial likelihood of irreparable misidentification.'" *de Jesus–Rios*, 990 F.2d at 677, *quoting Bouthot*, 878 F.2d at 1514, *quoting Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). While the "problems with evaluating and dangers in relying upon eyewitness testimony are well known and endlessly debated . . ." *Gullick v. Perrin*, 669 F.2d 1, 4 (1st Cir.1981), "it is only in extraordinary cases that identification evidence should be withheld from the jury." *Maguire*, 918 F.2d at 264, *quoting United States v. Turner*, 892 F.2d 11, 14 (1st Cir. 1989).[1]

The Supreme Court has found that the weighing of identification evidence is primarily the province of the jury, absent extraordinary circumstances indicating its unreliability: "We are content to rely upon the good sense and judgment of American juries . . . Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253–54, 53 L.Ed.2d 140 (1977), *quoted in Maguire*, 918 F.2d at 264.

■ While most of the cases involving suppression of identification testimony stem from occasions in which the police have utilized suggestive identification procedures, the Government's assertion that only identifications where there was police involvement warrant suppression is not correct. The First Circuit has held that

> [b]ecause the due process focus in the identification context is on the fairness of the trial and not exclusively on police deterrence, it follows that federal courts should scrutinize all suggestive identification procedures, not just those orchestrated by the police, to determine if they would sufficiently taint the trial so as to deprive the defendant of due process.

*Bouthot*, 878 F.2d at 1516.

That said, however, the First Circuit has found that lack of government involvement in the suspect's identification is a factor favoring a finding of lack of impermissible suggestivity. This rationale is evident in the First Circuit's holding in *Guzman–Rivera*, where, upon finding that the identification in that case was not impermissibly suggestive, the Court stated as follows:

> The record exhibits no evidence that the investigators controlled or manipulated the people that Ramos–Cotto [victim] would encounter during this search. Nor does the record reveal that the investigators indicated to Ramos–Cotto in any way that they believed appellant was the perpetrator.

990 F.2d at 683. *See also United States v. Hensel*, 699 F.2d 18, 40 (1st Cir.1983) (holding that an identification of defendants was not impermissibly suggestive where witness "was not subjected to a suggestive encounter, nor was the incident orchestrated by the government."); *Otsuki v. Dubois*, 994 F.Supp. 47, at 58–59 (D.Mass.1998) ("In the present case, however, there is no evidence whatsoever of police procedures that suggested to the witnesses in question that peti-

1. As stated above, the defendant seeks to attack the reliability of eyewitness testimony. However, in light of the applicable Supreme Court and First Circuit precedent we will not engage in the debate over the inherent reliability of eyewitness testimony. As stated by the First Circuit in *Gullick*, 669 F.2d at 4, fn. 8, "[W]e decline the [defendant's] invitation to reexamine the difficult questions raised in the literature concerning the reliability of eyewitness testimony."

tioner was the one who committed the crime.")

If the Court finds that the first prong of the test is not met, i .e., that the identification procedure used was not impermissibly suggestive, then the Court need not address the second prong of the test, whether the identification was nevertheless reliable. *See e.g., Guzman–Rivera,* 990 F.2d at 683 ("Since we do not find the identification impermissibly suggestive, we need not reach the likelihood of misidentification prong of the test.") In light of the above-cited caselaw, we turn to analyze the identification procedures utilized in this case, and in the alternative, if the identification procedures are found to be impermissibly suggestive, whether the identification was nevertheless reliable under the *Biggers* test.

**Analysis**

We turn first to analyze whether the identification procedures utilized in this case were impermissibly suggestive so as to render the identification of the defendant unreliable and therefore susceptible to suppression. For the reasons stated below, we find that the identification was not impermissibly suggestive, and that even if the identification was found to be impermissibly suggestive, the five *Biggers* factors would lead us to conclude that the identification is nevertheless reliable.

 The only indicia of suggestivity alleged by the defendant in this case is that the victims, Mr. Smith and Ms. Moon, were tipped off by an undisclosed source that the defendant frequented the "Las Casitas" treatment center on Tuesdays. Without further elaboration on the subject, defendant claims that this tip received by Mr. Smith and Ms. Moon is impermissibly suggestive because no information has been provided as to the reliability and/or the motivation of the informant. The Court finds that the mere fact that the victims were told that the defendant frequented this place on this particular day is insufficient to make a finding that such procedure was impermissibly suggestive.

This case is similar in its facts to *Guzman–Rivera,* where postal investigators took the victim to various locations to look for the defendant "upon receiving confidential information regarding appellant's whereabouts." 990 F.2d at 683. In fact, in this case there is less room for a finding of impermissible suggestivity because there was absolutely no involvement by police or government officials. Furthermore, as in *Guzman–Rivera,* there is no indication that the situation in which the victims identified the defendant was manipulated in order to showcase or isolate the defendant, or that there was any prompting of the victims at the moment that they both clearly identified the defendant as the second assailant. Based on these facts, we do not find that the identification procedures were impermissibly suggestive.

 Since we do not find that the identification was impermissibly suggestive, there is no need to reach the second prong of the test, whether although impermissibly suggestive, the identification is nevertheless reliable. Although we do not need to reach that issue, we find that the five *Biggers* factors mandate for a finding of reliability in this case. We find that the first four of the five *Biggers* factors weigh heavily in favor of a finding of reliability, and that the fifth one, the length of time between the crime and the confrontation, neither favors nor disfavors a finding of reliability of the identification.

First, it is clear from the undisputed facts that both witnesses had a clear opportunity to view the defendant during the commission of the crime. As stated above, until the very end, when he attempted to hide his face with the hood of his windbreaker, both victims had an unobstructed view of the defendant's face, as well as his entire body. There was also plenty of light for the victims to view the defendant. The second factor, closely linked to the first, also weighs in favor of a finding of reliability, insofar as both victims state that they were in the defendant's presence for several minutes, and that they had a clear, unobstructed view of his face during that time.

As to the third factor, the accuracy of the witness' prior description, defendant does not argue that Mr. Smith's and Ms. Moon's prior descriptions of the defendant were accurate and match his actual physical appearance. In fact, the defendant's attack on the reliabil-

ity of the description centers solely on the fact that the victims were tipped off as to defendant's possible whereabouts. Furthermore, both Mr. Smith and Ms. Moon gave detailed descriptions of the defendant, which were both consistent and accurate, as they match defendant's actual physical description with only a minor variation.

Both Mr. Smith and Ms. Moon have expressed certainty that the defendant is the second assailant who participated in the robbery of their residence on July 27, 1997. In addition, they were certain of that fact at the time of the initial confrontation where they identified defendant in front of "Las Casitas." Therefore, the fourth prong of the *Biggers* inquiry, the witness' level of certainty when identifying the suspect at the confrontation, weighs heavily in favor of a finding of reliability.

Finally, as to the fifth factor, the amount of time between the crime and the confrontation, the fact that six weeks passed between the crime and the confrontation neither adds nor detracts from a finding of reliability. In light of the fact that all other factors weigh clearly in favor of a finding of reliability, we will not invade the province of the jury by suppressing the identification of the defendant in this case.

### Conclusion

The Court holds that the defendant is not entitled to an evidentiary hearing in which to present testimony regarding the present motion. Furthermore, we find that Mr. Smith and Ms. Moon's identification of the defendant in front of "Las Casitas" was not impermissibly suggestive and should therefore not be suppressed. Because the initial identification was not impermissibly suggestive, the subsequent identification from the photographic line-up shall not be suppressed. Defendant has not brought to the Court's attention any independent basis for its suppression that is not linked to the original identification; therefore, we hold that the subsequent photographic line-up identification is also admissible. Finally, the Court holds that even if the original identification was impermissibly suggestive, it is nevertheless reliable and should thus be admitted on those grounds.

Pursuant to the above discussion, defendant's Motion to Suppress Identification and In Court Identification Testimony (**Dockets # 32, 44**) is **DENIED.**

**SO ORDERED.**