UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

Nos. 92-1210
 93-2050

 UNITED STATES,

 Appellee,

 v.

 FREDERICK HARDY,

 Defendant - Appellant.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]
 

 

 Before

 Torruella and Stahl, Circuit Judges,
 

 Carter,* District Judge.
 

 

 Owen S. Walker, Federal Defender Office, for appellant.
 
 Michael J. Pelgro, Assistant United States Attorney, with
 
whom Donald K. Stern, United States Attorney, and Ralph F. Boyd,
 
Jr., Assistant United States Attorney, were on brief for
 
appellee.

 

 October 12, 1994
 

 

* Of the District of Maine, sitting by designation.

 TORRUELLA, Circuit Judge. A grand jury returned a
 

five- count indictment alleging various firearm related charges

against defendant/appellant Frederick Hardy and his co-defendant

Raymond Moreno, Jr. A trial was held and the jury found both

defendants guilty on all counts. Moreno challenged his

conviction in a separate appeal. United States v. Moreno, 991
 

F.2d 943 (1st Cir.) (Torruella, J., dissenting), cert. denied,
 

114 S. Ct. 457 (1993). In this appeal, Hardy claims that the

government made several impermissible arguments at trial,

including improperly commenting in its closing on Hardy's

decision not to testify at trial. We believe that the

government's comment on Hardy's silence at trial violated the

Fifth Amendment, and that this error, coupled with other improper

arguments, deprived Hardy of a fair trial. We therefore vacate

Hardy's convictions and order a new trial.

 I. BACKGROUND
 

 A. Facts

 We are concerned here not with a claim of insufficient

evidence, but with a case in which we find that the government

improperly commented on Hardy's right not to testify and made

other inappropriate remarks during the course of the trial.

Accordingly, our description of the facts is not limited in this

case to evidence and inferences most favorable to the government,

but rather it is designed to provide a balanced picture of the

evidence appropriate for determining whether the comments and

remarks were harmless or prejudicial. Arrieta-Agressot v. United
 

 -2-

States, 3 F.3d 525, 528 (1st Cir. 1993).1 
 

 On the evening of April 18, 1991, a group of five law

enforcement officers, while on foot patrol in the Lenox Street

Housing Development in Boston, Massachusetts, heard a series of

gunshots coming from another area within the development. Three

of the officers, Officers Garvey, Perkins and Devane, ran in the

direction of the shots; the other two, Officer Murphy and Trooper

Drummy, returned to a parked cruiser.

 As Officers Garvey, Perkins, and Devane were running

down Hammond Street, they observed three black males emerge from

a courtyard in the direction of the gunshots, run across Hammond

Street, and disappear near a cluster of buildings across the

street. One of the officers described the three men as running

in a line in a "hunched over" manner. The men then disappeared

from view. Almost at once, two of the three officers, joined by

Officer Murphy (who had left his cruiser to assist in the foot

pursuit), saw three men running through a parking lot behind the

cluster of buildings, and gave chase. 

 The officers saw one of the three men veer off from the

other two and run in a separate direction. The second and third

men were then seen by the officers to come together briefly and

appeared to pass an object between them. Officer Murphy, who was

 

1 We have previously stated the relevant facts in United States
 
v. Moreno, 991 F.2d 943 (1st Cir.), cert. denied, 114 S. Ct. 457
 
(1993). In light of the fact that we do not view the evidence in
the light most favorable to the verdicts in this case, as we did
in Moreno, the two recitations of facts differ in some respects.
 
Id. at 944-46.
 

 -3-

closest to the two individuals, described the item being

exchanged as a dark object about one to one-and-a-half feet long.

The individual who took this object then ran off through a grass

courtyard. The individual who passed on the object, Raymond

Moreno, Jr., immediately stopped, raised his arms and

surrendered. 

 Another police officer, Paul MacIsaac, aided in the

pursuit. Upon arriving at the scene, Officer Murphy, who had

Moreno in custody, directed Officer MacIsaac to head in the

direction where the other man, to whom Moreno had passed the

object, had run. Officer MacIsaac followed these directions, and

came across two black males at a nearby intersection, standing on

a sidewalk, looking into an adjacent field. Officer MacIsaac

questioned the two men, conducted a pat-frisk, and then placed

the two men in the back of his cruiser. The officer eventually

took them to the station for questioning and they were later

released.

 Officer Garvey testified that in order to cut off any

escape route that the fleeing suspect might use, he had circled

around to the opposite end of the grass courtyard. Officer

Garvey soon saw a black male, wearing dark clothes, who was later

identified as Frederick Hardy, enter the courtyard. The Officer

testified that he never saw Hardy with any weapon in his

possession. After telling Hardy several times to stop, Officer

Garvey testified that as Hardy raised his arms -- first his

right, then his left -- over his head, he heard a soft thud on

 -4-

the ground nearby. Despite being only two to three feet away

from Hardy, however, Officer Garvey did not see any object leave

Hardy's hands. Hardy was then arrested. Hardy did not possess

any firearms when he was arrested. After Officer Garvey took

Hardy to a police cruiser, he returned to the area. A search of

the area revealed a .32 caliber pistol about five to eight feet

from where Hardy had stopped.

 The officers searched the path between the area of

Moreno's arrest and the spot at which Officer Garvey first

observed Hardy. The officers found a double-barreled sawed-off

shotgun with a 12 1/2 inch barrel, fully loaded with ammunition,

hidden in bushes along that route. 

 While Moreno and Hardy were being arrested, Officer

Devane was in search of the first of the three runners, who had

gone off in a separate direction. Officer Devane discovered a

black male, Steven Fern ndes, sweating and out of breath, hiding

in some bushes. After arresting Fern ndes and placing him in the

cruiser, Officer Devane found a semi-automatic pistol on the

ground near where Fern ndes had been hiding. 

 After receiving his Miranda warning at the police
 

station, Hardy said that he had been at the development by

himself to visit his niece and ran when he heard shots. Hardy

denied knowing Moreno or Fern ndes. At trial, however, a

resident of the housing development testified that he had seen

Hardy together with Moreno and Fern ndes a number of times during

the prior year. Additionally, Officer Dreary of the Boston

 -5-

Police Department testified that in March 1991, he had stopped a

red Isuzu Trooper, and that Hardy was the driver and Moreno was a

passenger in the front seat.

 B. Proceedings Below

 The grand jury returned a five-count indictment against

Hardy and Moreno on June 25, 1991. Count One charged Hardy with

being a felon-in-possession of a firearm, and Count Four charged

Hardy with being a felon-in-possession of ammunition, both of

which were in violation of 18 U.S.C. 922(g). Count Two charged

Hardy with possessing a firearm, a short-barreled Stevens 12

gauge, double barrel shotgun, in violation of 26 U.S.C. 

5861(d). Counts Three and Five charged Moreno with possession of

the same short-barreled shotgun and being a felon-in-possession

of ammunition.

 The trial took place over ten days from October 28,

1991 to November 14, 1991. The jury returned guilty verdicts on

all five counts.

 The court then sentenced Hardy to 262 months'

incarceration. Hardy appealed both his conviction and his

sentence, and on November 5, 1992, this Court, while retaining

jurisdiction, remanded the case to the district court with

respect to some sentencing issues. The district court then

reaffirmed Hardy's sentence, and Hardy again appealed. See
 

United States v. Hardy, 829 F. Supp. 478 (D. Mass. 1993). This
 

second appeal was then consolidated with the first appeal.

 II. STANDARD OF REVIEW
 

 -6-

 Hardy argues that the prosecutor improperly commented

on his failure to testify at trial, and that this comment

constituted a violation of his Fifth Amendment privilege against

self-incrimination, which unduly prejudiced his ability to obtain

a fair trial. We will utilize a de novo standard to review the
 

legal question of whether the prosecutor's argument constituted

constitutional error. United States v. Glantz, 810 F.2d 316, 320
 

n.2 (1st Cir.), cert. denied, 482 U.S. 929 (1987). We will
 

review the trial court's decision to deny Hardy's motion for a

mistrial, based on this alleged constitutional violation, for an

abuse of discretion. Id. (finding that district court abused
 

its discretion by ordering a new trial where the court believed

that the prosecutor improperly commented on the defendant's

failure to testify or produce documents at trial); see also
 

United States v. Turner, 892 F.2d 11, 12-13 (1st Cir. 1989). 
 

 III. THE PROSECUTOR'S COMMENT ON THE DEFENDANTS' SILENCE
 

 A. Did the Prosecutor's Comment Violate the Fifth Amendment?

 The most serious argument that Hardy raises in this

appeal concerns the prosecutor's closing argument at trial.2 In

Griffin v. California, 380 U.S. 609, 615 (1964), the United
 

States Supreme Court held that the Fifth Amendment's self-

incrimination clause forbids the prosecution from commenting on

an accused's failure to take the stand and testify during a

trial. A prosecutor's comment is improper where, under the

 

2 Defendant Moreno did not raise this Fifth Amendment argument
in his appeal.

 -7-

circumstances of the case, "the language used was manifestly

intended or was of such character that the jury would naturally

and necessarily take it to be a comment on the failure of the

accused to testify." Glantz, 810 F.2d at 322 (citations
 

omitted). A prosecutor's comment does not therefore need to be

direct; rather, a prosecutor may run afoul of the rule in Griffin
 

by making such comments inferentially. See Glantz, 810 F.2d at
 

322; see, e.g., United States v. Skandier, 758 F.2d 43, 45 (1st
 

Cir. 1985) (prosecutor's question during closing as to how

defense counsel would explain certain events which occurred, in a

case where the defendant had not taken the stand, was improper);

United States v. Flannery, 451 F.2d 880, 882 (1st Cir. 1971)
 

(prosecutor's comment that certain government evidence was

uncontradicted, when contradiction would have required the

defendant to take the stand, was improper).

 We believe that here, the prosecutor improperly called

attention to the failure of Hardy to take the stand and testify

at trial. The prosecutor stated:

 Ladies and gentlemen, the evidence here,
 the only reasonable conclusion that can
 come from this evidence is that Mr. Hardy
 possessed that .32 caliber pistol loaded,
 Mr. Moreno possessed the sawed-off
 shotgun loaded, and that during the
 course of the chase, Mr. Moreno passed it
 off to Mr. Hardy so that he could get rid
 of it. What the evidence shows is that
 these two defendants that night were
 running and hiding. They'd been involved
 in that incident and then they
 unfortunately had the misfortune of
 running right into the police who just
 happened to be in the area, and they were
 running and hiding, running from the

 -8-

 police and hiding the evidence from the
 police. They're still running and hiding
 
 today. The time has come for them to
 
 stop running and stop hiding. The time
 
 has come for them to be held accountable
 for the wrongful acts that they committed
 on the night of April 18th, 1991 in
 Boston. That time is now and only you
 can hold them accountable. Thank you.
 (emphasis added).

Defense counsel objected and requested a limiting instruction.

The district court was initially concerned that such an

instruction might hurt rather than help, because the jury might

not have construed the prosecutor's remark as a comment on

defendants' silence. The court then asked the government:

 Tell me this: In what other sense can
 the Government argue that [the
 defendants] are running and hiding even
 at this time?

The government replied:

 Because, your Honor, I'm just drawing an
 analogy between their running and hiding
 on that night and the Government's burden
 of proving guilt beyond a reasonable
 doubt.

The court stated:

 I'm going to give the limiting
 instruction. It doesn't satisfy me.

The court then gave the following instruction to the jury:

 Members of the jury, I sustain the
 objection to the argument . . . that even
 today the defendants are running and
 hiding. You will disregard that argument
 and not consider it in any respect in
 your consideration of the evidence in
 this case.

The court then asked defense counsel if they requested further

instructions, and they replied no. The defendants moved for a

 -9-

mistrial, and the court denied these motions.3

 The prosecutor's comment during his closing set up an

analogy between what the defendants were allegedly doing on the

night of the crime -- running and hiding -- and what the

prosecutor believed they were doing during the trial -- running

and hiding. Of course, the defendants were not literally running

from the trial or hiding during the trial. Rather, they were

both in custody and were sitting silently during each day of the

proceeding. Neither defendant testified on his own behalf. The

natural and necessary implication of the prosecutor's remark was

therefore that the defendants were running from the evidence

presented against them, and hiding behind their right to silence

during the trial. The prosecutor's comment therefore violated

the Fifth Amendment. 

 B. Is a New Trial Required?

 Where it appears that the prosecutor has made an

improper argument to the jury, this Circuit has established a

standard to evaluate whether a new trial is required. 

 Although we have used slightly varying
 terminology in describing [the relevant]
 factors, the common denominators are (1)
 the severity of the misconduct; (2) the
 context in which it occurred; (3) whether
 the judge gave any curative instructions
 and the likely effect of such
 instructions; and (4) the strength of the

 

3 In its charge to the jury, the trial court did state generally
that the government had the burden of proof, that the defendants'
had a constitutional right not to testify, and that the jury
should not draw any negative inferences from the exercise of that
right. These comments, however, in no way specifically addressed
the prosecutor's improper remark.

 -10-

 evidence against the defendant.

United States v. Manning, 23 F.3d 570, 574 (1st Cir. 1994)
 

(citations omitted). We treat these factors in order, to

determine if the prosecutor's comment was harmless. 

 First, as we discussed above, we believe that the

prosecutor's argument constituted a violation of the Griffin
 

rule. Additionally, we believe that the comments were, in a

sense, deliberate. In his closing argument, the prosecutor had

constructed an analogy based on the facts of the case, with

certain rhetoric significantly repeated, which appeared to be

planned. We do not believe that the prosecutor intentionally

intended to influence the jury by commenting on Hardy's silence,

and we hope that our belief is not misplaced. We do believe,

however, that when preparing or reviewing his proposed closing,

the prosecutor should have known that such a comment was

improper. 

 Second, we point out that this comment was made against

a backdrop where the possibility that Hardy would receive a fair

trial was already in danger -- that is, the prosecutor's closing

was not an isolated instance of misconduct. See United States v.
 

Capone, 683 F.2d 582, 586 (1st Cir. 1982). In Moreno, 991 F.2d
 

at 947-51, we addressed several arguments, (two in the majority

opinion, two more in the dissent) which Hardy has also raised in

this appeal, relating to improper arguments made by the

government during trial. Our conclusions in Moreno are equally
 

applicable to this case.

 -11-

 In Moreno, we noted that in the prosecutor's opening
 

remarks, he stated, "the evidence will show that [the police

officers] were doing their jobs protecting the community that has

been plagued by violence, senseless violence, shootings and

killings. That's why they were there and that's why we're here

today." Moreno, 991 F.2d at 947. We concluded that because
 

there was no evidence in the case about "senseless violence" or

"shootings and killings," it was patently improper for the

prosecutor to make those remarks. Id. The remarks played upon
 

the jury's emotional reaction to neighborhood violence and was

outside the bounds of legitimate argument. Id. 
 

 We were equally disturbed by a second argument by the

prosecutor which not only reiterated the senseless violence

theme, but also established a second departure from the "straight

and narrow." Id. at 948. The prosecutor argued in his closing
 

that the shotgun was not just tossed away but deliberately

concealed, and continued: "Forget about the fact that maybe Mr.

Hooker [who lived nearby] or his wife or his three kids might

come out and look at the gun and get their heads blown off. But

I'm sure Mr. Hardy had other things on his mind going through

there, like getting away from the cops." Although we found that

both of these arguments were improper, we found that the errors

were harmless as they related to Moreno.4

 

4 We stated that the prosecutor's comments about the danger to
Mr. Hooker and his family, although improper, were harmless when
considered against Moreno, in part, because the objectionable
remarks did not directly relate to Moreno. Moreno, 991 F.2d at
 
948. The improper remarks, however, did have a greater effect on

 -12-

 The dissent found two more arguments made by the

prosecutors to be troublesome. The prosecutor vouched for a

government witness, intimating that that witness possessed some

information beyond the evidence presented. Id. at 951
 

(Torruella, J., dissenting). The prosecutor also improperly

disparaged defense counsel, by stating that they were paid to see

things in a different way, defense counsel was talking out of

both sides of his mouth, and that one defense argument was meant

to divert the jury's attention. Id.; see, e.g., United States v.
 

Boldt, 929 F.2d 35, 40 (1st Cir. 1991) (finding that the
 

prosecutor's statement that "it's a favorite defense tactic to

try to get you to focus on unnecessary facts" was improper,

especially in light of the institutional nature of the comment

which cast suspicion on the role of defense counsel in general).

The jury was therefore exposed to a number of emotional and

prejudicial arguments which potentially interfered with its

ability to appraise the evidence objectively and dispassionately.

 Third, while the trial court gave a limiting

instruction, and Hardy's counsel did not request a stronger

instruction, we do not believe that the curative effect of the

judge's instruction negated the effects of the prosecutor's

constitutional indiscretion. Whether a curative instruction is

sufficient to avoid prejudice depends on the impact of the remark

 

Hardy's ability to get a fair trial, because the remarks did
relate directly to his alleged actions. 

 -13-

taken in the context of the whole of the evidence, including any

other aggravating remarks or circumstances that may increase the

risk that the improper remark did affect the outcome. An

improper comment that may seem insignificant where the evidence

is overwhelming can assume a very different aspect in a close

case. This is such a close case. 

 Finally, the strength of the evidence proffered against

Hardy was not overwhelming. First, the government's case against

Hardy largely rested on the credibility of Officer Garvey.

Therefore, if the jury disbelieved, or had questions about,

Officer Garvey's testimony, we do not believe that Hardy would

have been convicted. Second, the jury was required to draw a

number of inferences in order to convict Hardy. No officer ever

saw Hardy possess either the pistol or the sawed-off shotgun.

While Officer Garvey testified that after he stopped Hardy, he

heard a soft thud as Hardy raised his arms, Garvey never saw a

gun in Hardy's hand, or fall from his hand, despite the fact that

he was only two to three feet away from Hardy. Rather, the

officers found the pistol later, in the area where Hardy was

stopped. Additionally, other officers found the shotgun hidden

in an area that Hardy had seemingly passed through, but nobody

saw Hardy dispose of the weapon there. There were also other men

stopped in the area who could have somehow been responsible for

the guns. We do not believe that this circumstantial evidence,

which for the most part rested on Officer Garvey's credibility,

clearly established Hardy's guilt. Moreover, in light of the

 -14-

prosecution's comment, the jury may very well have wondered,

either consciously or subconsciously, what Hardy had to say about

the extent of his involvement, and concluded that he must have

had something to hide because of his failure to testify.

 The district court did not evaluate these relevant

factors on the record to determine if a new trial was warranted

in light of the prosecutor's improper closing argument, when

Hardy moved for a mistrial. Because all of these factors cut in

favor of a new trial, we believe that the district court abused

its discretion when it denied Hardy's motion. The government

improperly commented on Hardy's failure to testify, and in light

of the government's other improper comments and the evidence

presented, we believe that this constituted reversible error.

See, e.g., United States v. Barton, 731 F.2d 669, 675 (10th Cir.
 

1984). For the foregoing reasons, we vacate Hardy's
 

convictions and order a new trial.
 

 -15-